Burnett *et al. v.* Abbott.

---

BURNETT ET AL. *v.* ABBOTT.

PRACTICE.—*Substituted Complaint.*—Where the record shows that a substituted complaint was filed, and that no objection was made, the Supreme Court will presume that it was properly filed.

COUNTY COMMISSIONERS.—*Powers.*—A board of county commissioners has. no power to enter into contracts for boring wells for oil or sinking shafts for coal, either alone or in partnership with others.

PRACTICE.—*Appeal from County Commissioners.*—Where an appeal has been taken from the action of a board of county commissioners, and the cause has been tried in a circuit court, without objection and as if properly appealed, it is too late to raise the objection in the Supreme Court, that no appeal lay from the board of commissioners to the circuit court.

From the Vermillion Circuit Court.

*R. W. Thompson, I. W. Pierce, W. E. Hendrick* and *J. G. Williams,* for appellants.

*J. P. Baird, C. Cruft* and *W. Mack,* for appellee.

WORDEN, J.—On December 17th, 1872, the board of

Burnett *et al. v.* Abbott.

commissioners of Vigo county made the following order, viz.:

"Ordered that Joseph Abbott be allowed seven thousand five hundred and sixty-three dollars for work done on poor-house well."

It does not appear what, if any, claim was filed by Abbott before the board of commissioners. Burnett, it seems, appealed from the order to the Vigo Circuit Court. No question was made as to the right of Burnett to appeal, or as to the regularity of the appeal.

On the application of Abbott, the venue was changed to the Vermillion Circuit Court.

The record informs us that in the latter court, on October 7th, 1873, the plaintiff, Joseph Abbott, by his attorneys, "filed a substituted complaint herein, which is in the words and figures following, to wit:

"Vigo County, Indiana, Dr.

"To Joseph Abbott, assignee of Gartrell & Company,

"To boring oil-well on poor-house farm, as per written contract (copy filed).

| | |
|---|---|
| 300 feet at $2.50 per foot, . . . . | $750.00 |
| 300 feet at $3.00 per foot, . . . . | 900.00 |
| 915 feet at $4.00 per foot, . . . . | 3,660.00 |
| 10,800 bushels of coal at 15c., . . . . | 1,620.00 |
| 10,000 bushels of coal at 10c., . . . | 1,000.00 |
| Belting, . . . . . . . . | 55.00 |
| Pulley, . . . . . . . | 28.00 |
| Hauling, . . . . . . . . | 50.00 |
| Services for 270 days at $5.00 per day, . . | 1,350.00 |
| | $9,413.00 |

"Contract."

Here a long contract is set out, which it is unnecessary to copy in this opinion. The substance may be stated in much shorter space. It recites that the board had, on the "poor-farm" of the county, machinery for boring wells, consisting of engine, boiler and tubing, and that they had bored to the depth of two hundred feet, and had appropriated to the

expenses thereof one thousand dollars. In consideration of the covenants of Gartrell & Co., the board let to the said Gartrell & Co. the poor-farm, describing it, for the term of ninety-nine years, for mineral and coal oil purposes, giving the lessees the right to bore for oil and dig for minerals anywhere on the premises, with free ingress and egress; and the board sold to the lessees, for the consideration aforesaid, the fixtures, consisting of the engines, boilers, tubing, etc., and also transferred to them the appropriations which had been made for the purpose of defraying expenses, subject to the conditions stated.

The lessees agreed to bore the well, which had been commenced, to the depth of one thousand six hundred and fifty feet, and should they find coal oil at that or any other depth, or at any other place on the premises where they might choose to dig, in what they might deem paying quantities, they were to pay to the board one-half of the value of the machinery furnished, and fi.e per cent. of the net dividends of the oil-well or wells; and in that event, the board was to pay one-half the expense of boring the well or wells. Should the lessees fail to "strike oil" in paying quantities, but should they strike fresh water or coal in kind and quantity to suit the board, the latter reserved the right to pay the lessees for their labor and expenses whatever two disinterested persons might say they were worth, each party to choose one, and if they failed to agree, they were to choose a third. It was further stipulated that the lessees should not be deprived of the right to bore for oil at any time or place, and that if oil should not be found in paying quantities the lease was to be totally void, and the board was to pay the lessees as above stated and have back the machinery.

Then follows the petition of Abbott to the board of commissioners, and the action of the board thereon, as a part of the cause of action, as follows:

"To the Honorable, the Board of Commissioners of Vigo County:

"Joseph Abbott, one of the members of the firm of Gar-

Burnett *et al. v.* Abbott.

trell & Co., represents that, in pursuance of the contract made with said board by Gartrell & Co., said company commenced the work of boring said well as provided in said contract; that while the work was in progress, he purchased the interest of said Gartrell in said contract and has now the sole interest therein; that he has bored said well to the depth agreed by said contract, viz., one thousand six hundred and fifty feet; that coal oil in paying quantities has not been found; and that your petitioner is satisfied that it can not be so found on the lands named in said contract; that further experiment is useless, and might lessen the value of said land. Your petitioner now appears to surrender all the machinery furnished by the board to Gartrell & Co., and to surrender said lease, and does hereby surrender it, and asks the board to appoint a disinterested appraiser to act with one so selected, to fix under the contract the amount the board shall pay your petitioner for his labor and expenses in boring said well.

"It is therefore ordered by the board, after hearing the evidence, that the lease to Gartrell & Co. of poor-house be declared void; that this board receive the machinery furnished Gartrell & Co., on the said farm, and that Nathan Balding is hereby appointed an appraiser, to act with William Patrick, selected by said Abbott, to appraise the amount to be paid by the board to Abbott & Gartrell & Co., for his time, labor and money expended in boring said well; the said appraisers, if they cannot agree, to select a third, and the appraisers, or a majority, to report the amount assessed for Abbott to the board at its present term."

This order was made June 18th, 1872. The clerk says that "said bill of account, lease, petition, and order of board of commissioners were filed as a substituted complaint, and endorsed," etc.

The cause was submitted to the court for trial, and there was a finding and judgment in favor of Abbott in the sum of seven thousand five hundred and sixty-three dollars.

The error assigned and relied upon is, that the complaint did not state facts sufficient to constitute a cause of action.

The appellee has moved to strike out the papers stated by the clerk to have been filed as a substituted complaint. We are of opinion, however, that the motion cannot prevail. It is the proper province of the clerk to enter upon the proper order book the filing of an original, amended or substituted complaint. The entry, when thus made, becomes a part of the record in the cause. The record in this case, to be sure, does not show that the original complaint, if there ever was one, had been lost, or that the court granted leave to file a substituted complaint. But as the record comes up to us showing the filing of the substituted complaint, no objection having been made in the court below, we will presume it was properly filed. The appellee, having filed the papers and permitted the clerk to note them as his substituted complaint, cannot now be permitted to disclaim them as such.

We come to the main question in the cause. The account filed, standing alone and without reference to the written contract, might, for aught we can see, have constituted a good cause of action. But it shows on its face that it accrued under the written contract, a copy of which was filed. Thus it appears affirmatively, that if the county is liable to the appellee, it is by virtue of the written contract.

The contract, in our opinion, is utterly void, for want of power on the part of the board to enter into it. No statute has been cited, nor are we aware of any, which authorizes the board of commissioners to enter into such contract. Boring wells for oil, or sinking shafts for coal, either alone or in partnership with others, are enterprises beyond the functions and province of a board of county commissioners, and the board cannot bind the county to pay the expense of such works. See, on this subject, Dillon on Mun. Corp., vol. 1, secs. 100, 103, 372, and vol. 2, sec. 749.

It is claimed by the appellee that the allowance made by the board to Abbott should be regarded as a voluntary one, from which no appeal would lie. This question is not before

us, no objection of the kind having been made in the court below. The case was tried in the court below, on the appeal, without objection and as if properly appealed. It is too late now to say, in this court, that no appeal lay from the board of commissioners of Vigo county to the circuit court of that county.

We are of opinion that the complaint states no facts constituting a cause of action, because the contract out of which the cause of action arose was one which the board of commissioners had no power to make.

The judgment below is reversed, with costs.