No. 7571.

THE DRIFTWOOD VALLEY TURNPIKE CO. v. THE BOARD OF COMMISSIONERS OF BARTHOLOMEW COUNTY.

COUNTY COMMISSIONERS.—*Powers of in Regard to Repair of Bridges.*— *Contract.*—*Ultra Vires.*—A board of county commissioners has no authority to furnish aid to a gravel road or turnpike company, in building or repairing its road at the expense of the county, nor to enter into a contract therewith for the future repairs of a bridge, or the approaches thereto, on the line of its road.

SAME.—*Corporations, Public and Private.*—*Distinction in Regard to Defences.*—There is a broad difference between a private corporation organized for a private purpose, though subserving a public interest, and a public corporation, like a county or city organization, for public purposes only. The latter class may always defend on the ground that the supposed contract was outside of the authority conferred on them by law. *The State Board of Agriculture* v. *The Citizens Street R. W. Co.*, 47 Ind. 407, distinguished.

SAME.—The officers of a municipal corporation can not bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to its purposes.

SAME.—*Statute Construed.*—Section 4 of the Gravel Road Act, 1 R. S. 1876, p. 655, does not empower the Board of County Commissioners to enter into a contract on its own part in relation to the road.

SAME.— *County Bridges.*—*Approaches.*— *Repairs.*— It is the duty of the Board of Commissioners, under the statute, to cause all the bridges in

the county to be kept in repair, and the approaches thereto are to be deemed a part thereof.

SAME.—*Contract must be Made in Pursuance of the Statute.*—The mode in which a county is bound to provide for repairs to bridges and their approaches is specially pointed out by statute, and a contract by the Board of Commissioners thereof, which contravenes that mode and substitutes another, is void.

SAME.—*How Bridges are to be Repaired.—Statute Construed.*—While the County Commissioners must cause all the bridges of the county to be kept in repair, by section 2, 1 R. S. 1876. p. 239, the expense thereof must be borne by the road district in which such bridge is situate, so far as it is able, and the residue by the county.

From the Jennings Circuit Court.

*S. Stansifer*, for appellant.

*F. T. Hord*, for appellee.

WORDEN, J.—Action by the appellant against the appellee. Demurrer to answer for want of sufficient facts carried back and sustained to the complaint. Judgment for defendant. We set out the first paragraph of complaint as follows:

"1st. The plaintiff, the Driftwood Valley Turnpike Company, complains of the defendants, the Board of Commissioners of the county of Bartholomew, and says that plaintiff is a corporation organized under the act of the Legislature of said State, entitled 'An act authorizing the construction of plank, macadamized and gravel roads,' approved May 12th, 1852, and acts amendatory and supplemental thereof, to construct a gravel road in said county, described in the articles of association of said company as follows: 'Beginning at a point where the Columbus and Bedford road intersects the Columbus and Rockford road; running thence along the general course of the public highway towards Columbus until it strikes the bridge across Driftwood; thence along the general course of the highway leading from Columbus to Nashville to the foot of the hill near the residence of Abel Shields,' the line of the route of said gravel road for the whole distance thereof, which was and is six miles and twenty feet, was over and upon public

highways which were under the jurisdiction of the defendant, and at a regular and stated session of said board of commissioners, defendant granted to plaintiff the right of way and privilege to construct said gravel road along and upon said highways the whole distance of said gravel road except the 900 feet hereinafter mentioned and described, by an order of said board of commissioners duly entered of record in the proceedings of said board. In pursuance thereof, and within two years after plaintiff's corporation was organized as aforesaid, plaintiff constructed a gravel road over the whole distance and upon said line of said route, except that portion thereof commencing at the west end of said bridge and running thence west 900 feet, which portion plaintiff did not construct for reasons heretofore and hereafter stated. Said gravel road, so constructed as aforesaid, was made of gravel so as to secure and maintain a hard, smooth, even and permanent surface, and when so constructed, plaintiff erected a toll gate at said point, 900 feet west of the west end of said bridge, and where said Columbus and Rockford road intersects said road leading from Columbus to Nashville, and has ever since, and for more than six years last past, taken tolls for travel thereon, but no tolls were taken for travel over said 900 feet until as hereinafter stated. Said bridge was and is a county bridge, the property of said county, and under the jurisdiction of defendant, as well as the approach thereto from the west, and being from a low bottom, the approach is by a high fill or embankment, to wit: 300 feet in length from said toll gate to said bridge. Said road, over which said right of way was not granted as aforesaid, is over a low bottom, and had frequently before the construction of plaintiff's said road as aforesaid, as well as said fill or embankment, been washed away, and wide and impassible cuts and chasms made therein and there-through by the overflow of said river, and plaintiff avers, that the general course of said Driftwood river

passing said Columbus is south, but just north of said bridge it curves to the west, and then to the east, and then again to the south, and, in its said easterly course, it runs by and alóng said low bottom near said road, and said 900 feet of said road. The west end of said bridge is at the last turn of said river to the south. Plaintiff says, that were not said washes, cuts and chasms made by the overflow of said stream repaired, before repetition of said high water, in addition to what has heretofore been stated and will hereafter be shown, the consequences would be, that said approach to said bridge would be entirely washed away, and the foundation of the west abutment of said bridge would be endangered, and the bridge thereby rendered useless by repeated overflows of said river. For and on account of the trouble and great expense of keeping said 900 feet of said road in repair, and for other reasons heretofore and hereinafter shown, plaintiff did not construct her road over said 900 feet, nor were tolls taken for travel over the same until as hereinafter stated. And plaintiff determined, for the causes and reasons aforesaid, to abandon said 900 feet of said road, and would have done so by a unanimous vote of her board of directors but for the action of defendant hereinbefore and after stated. After the completion of plaintiff's road, as aforesaid, and before the March term, 1868, of said board of commissioners, John A. Keith had constructed a levee across said low bottom from the west end of said bridge along the south side of said road to near said toll gate, which would and did, as long as it stood, protect said road, bridge, and its said approach from injury or damage by the overflow of said river; but plaintiff, still fearing and believing that said levee would be washed away by the overflow of said river, and the right of way therefor not having been granted as aforesaid, declined to construct said gravel road over said 900 feet, and would have abandoned the same, as aforesaid, but for an action of defendant as

230        SUPREME COURT OF INDIANA,

The D. V. Turnpike Co. v. The Board of Com'rs, Bartholomew County.

hereinafter shown. At the March session, 1868, of said board of commissioners, defendant, in view of the fact that the construction of said gravel road over said bottom and said approach to said bridge would protect the road and approach, in a measure, from the ravages of the floods of said streams, and particularly those not of a violent character, proposed to plaintiff, that plaintiff should construct said gravel road over said 900 feet of said road and take charge thereof, agreeing with plaintiff to repair all injuries occasioned thereafter by the overflows of said stream in the event said levee should be washed away, and to that end invited plaintiff to submit a proposition to said board, in relation thereto, which plaintiff did, and in writing, at said May term, as follows ;

"'STATE OF INDIANA, BARTHOLOMEW COUNTY.

"'To the Board of Commissioners of said County:

"'The Driftwood Valley Turnpike Company proposes to extend their road from its eastern terminus to the west end of the county bridge, without agreeing to widen the embankment at the bridge. In the event Keith's levee breaks or washes away, the Company is not to be held responsible for the washing away of said road, and in such event the county is to fill up and repair the same. The Company is to build and maintain a good, substantial fence on the north side of the embankment from the end of the bridge to a sycamore tree, except in case of breaking or giving away of said embankment. The toll-gate is not to be moved east of where it now is, and the public is to have free use of the road between the bridge and the gate, when the gate is not passed.

"'JOSEPH I. IRWIN, President.'

"Which proposition was, at said term of said Commissioners' Court received by said Board, and then acted upon by defendant as follows :

"'And the Board having duly examined the foregoing petition accepts the same with its propositions and exceptions.'

All of which, with said proposition, was duly entered of record in the proceedings of said Board, and a copy thereof is filed herewith. Immediately thereafter, and in pursuance of said agreement, defendant constructed her said gravel road over said 900 feet in all respects in the manner as the other parts of said road had been constructed, and maintained said fence as proposed, until said embankment was washed away, as hereinafter shown, all at a cost of $200.00, and said fence was necessary for the protection of travel over said bridge and approaches. The said toll gate was not and has not been moved from where it then was, but stands where it was first erected, and the public, not passing through said gate, has, all the time, had the free use of said 900 feet of said road, and in all respects plaintiff has, at all times, performed all the conditions on her part of said agreement. Some time in the year 1875, said levee, constructed by said Keith, was washed away by the overflow of said river, and deep and wide cuts, washes and chasms were thereby made in said road and said bridge approach, all within said 900 feet, and in pursuance of said agreement defendant made all proper and necessary repairs thereof. Again in the early part of the year 1876, by another overflow of said river, to which it is subject, deep and wide cuts, washes and chasms were thereby made in said bridge approach and said road within said 900 feet, so much so as to render it wholly impossible to pass or travel thereon. Thereafter, on the first day of February, 1876, at a special session of said board, called to consider said matter, plaintiff notified defendant of said injury and damage to said road and bridge approach, and demanded of defendant that said board of county commissioners make the necessary and needed repairs thereof, in pursuance of said agreement, which defendant refused to do in whole or in part, for the reason assigned by said board, in its record of proceedings, that they do not think the county liable to make said repairs. (Said

notification and demand were in writing, and a copy thereof, as well as the proceedings of said board relative thereto, are filed herewith.)

"Plaintiff says that, but for said agreement with defendant, plaintiff never would have gone to the trouble and expense of constructing said 900 feet of road, or of said fence as aforesaid. Plaintiff avers that but, to wit, 400 feet of said 900 feet from the west end of the bridge west 400 feet, including said approach, is liable to, and has heretofore been injured as aforesaid. Plaintiff further says that the way over said bridge and 900 feet of said road is the only way and road for travel between said Columbus and a large portion of the western part of said county; that there is no bridge across said stream south of said bridge at Columbus, and no ford nearer than three and a half miles south of said bridge, which can be used only in times of low water, and no ford or bridge north nearer than four miles, and the roads leading to said ford and bridge are dirt roads, of an indifferent character, and almost impassable when not dry or frozen. Plaintiff further says that, when defendant refused to make said repairs as aforesaid, plaintiff notified defendant that she would make the same under protest, inasmuch as, without repairs, travel over the whole of plaintiff's road was entirely cut off and suspended, and would have, and did so remain, until said repairs were made as hereinafter shown, and look to and require of defendant the payment to plaintiff of the reasonable cost and expense thereof. In pursuance of said notification, demand, refusal and protest, plaintiff did immediately thereafter make said needed and necessary repairs of said bridge approach and said road, doing no more than was necessary to make such repairs, at a cost and expense of $678.32, which was paid by plaintiff, and which was the reasonable worth of said work, and no more. A bill of particulars of said work and particulars is filed herewith, leaving due and unpaid the sum of $678.32."

The second paragraph was the same, in substance, as the first, with the additional averment that "the tendency of said stream, when overflowed, is to cut through said bottom as above, and make a new channel, and thus leave the bridge on the east side of the river, and unless said cuts and chasms are filled up and repaired as they are made, said result will be produced by repeated overflows of said stream."

We are of opinion that the contract set out was void, and, consequently, that the demurrer to the complaint was correctly sustained.

We pass over the point made by the appellee, that it was the duty of the appellant to construct its road to the west end of the bridge mentioned, so as to cover the 900 feet, in accordance with its articles of association, and, therefore, that its construction could be no valid consideration for the contract of the appellee. Other insuperable objections are urged to the validity of the contract.

We are not aware of any statute which expressly, or by implication, authorizes the board of commissioners to appropriate money of the county in the working, improvement or repair of the ordinary highways of the county. The highways are worked under the supervision, and the tax for that purpose is assessed with the concurrence, of the board of commissioners, and expended by township officers. See act on that subject. 1 R. S. 1876, p. 855.

Still less, if possible, is any authority conferred upon the board to furnish aid to a gravel road or turnpike company in building or repairing its road, at the expense of the county. In the case of *Harney* v. *The Indianapolis, etc., R. R. Co.*, 32 Ind. 244, it was held that a county had no power, without affirmative legislation, to make an appropriation from its treasury, by way of donation to a railroad company, to aid in the construction of its road. The court, among other things, said: "The counties are corporations created for the purpose of convenient local municipal gov-

234    SUPREME COURT OF INDIANA,

The D. V. Turnpike Co. v. The Board of Com'rs, Bartholomew County.

ernment, and possess only such powers as are conferred upon them by law. They act by a board of commissioners, whose authority is defined by statute. One of the powers conferred is, to collect taxes levied upon the people and property within the county. In the disposition of the money thus collected into the general treasury, the board has not unlimited discretionary choice as to the objects upon which it shall be expended. It can only be applied to certain specified objects, and the building of railroads is not one of these objects, or necessary to carry into effect any of the purposes for which such corporations were created."

In *Burnett* v. *Abbott*, 51 Ind. 254, the county board made a contract conditionally to pay certain expenses of boring wells for oil and digging for minerals. The contract was held void for want of authority to enter into it. Nor can the board appropriate the funds of the county to the payment of the debts of a county agricultural joint stock company, or to the building of school-houses. *Warren County Agricultural Joint Stock Co.* v. *Barr*, 55 Ind. 30 ; *Rothrock* v. *Carr*, 55 Ind. 334. But the appellant insists that, as the appellee has received the full benefit of the contract, the latter is estopped to set up that it was *ultra vires*, and refers to the case of *The State Board of Agriculture* v. *The Citizens Street Railway Company*, 47 Ind. 407. That, however, was the case of a private corporation, the street railway company, that sought to avoid its obligation on the ground of want of power to make the contract. There is a broad difference between a private corporation organized for a private purpose, though subserving a public interest, and a public corporation, like a county or city, organized for public purposes only, and whose obligations must be paid from public funds raised for public purposes only. The latter class of corporations may always defend, on the ground that the supposed contract was outside of the authority conferred on it by law. In 1 Dillon Munic. Corp., sec

381, the author, after stating the general doctrine that the officer of a municipal corporation can not bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, says :

"It results from this doctrine that unauthorized contracts are void, and in actions thereon the corporation may successfully interpose the plea of *ultra vires*, setting up as a defence its own want of power under its charter or constituent statute to enter into the contract."

The 4th section of the gravel road act, 1 R. S. 1876, p. 655, provides that "The directors of said company shall proceed to locate and lay out said road, and may with the consent of the board of county commissioners of the county locate the same over and upon any state or county road, or other public highway, entered of record and granted upon such conditions as to such board may seem just and reasonable," etc.

It is claimed by the appellant, that, as the provision quoted authorizes the board to consent to the location of the road upon a public highway, upon such *conditions* as to the board shall seem just, this authorizes the board to enter into contracts on its part. We do not see that the statute has such effect. The board may attach conditions on which it grants its consent, but this is an entirely different thing from entering into contracts on its part. The board may grant its consent, on condition that the turnpike company, or perhaps any other person, shall do, or refrain from doing, a particular thing. But this implies no power on the part of the board to enter into contracts on its part in relation to the road. Besides, it does not appear from the complaint, that, when the consent was given, any conditions were attached to it.

What we have thus far said, has been said on the theory that the whole 900 feet mentioned in the complaint was a part of the turnpike road, and no part of the bridge.

The appellee contracted as follows : "In the event Keith's.

levee breaks or is washed away, the company is not to be responsible for the washing away of said road, and in such event the county is to fill up and repair the same." In the complaint it is alleged, that, in the year 1875, "said levee, constructed by said Keith, was washed away by the overflow of said river, and deep and wide cuts, washes and chasms were thereby made in said road and said bridge approach, all within said 900 feet," etc. "Again, in the early part of the year 1876, by another overflow of said river, to which it is subject, deep and wide cuts, washes and chasms were thereby made in said bridge approach and said road, within said 900 feet," etc. Further on it is averred, "that but, to wit, 400 feet of said 900 feet from the west end of the bridge west 400 feet, including said approach, is liable to, and has heretofore been injured as aforesaid."

Now, if the approach to the bridge is to be deemed a part of it, and is to be kept in repair by the county, a different question arises from that which has already been considered, for the contract in its terms is broad enough to cover that part of the road which constitutes the approach, and the allegations of the complaint are sufficient to show that that part had been injured as alleged.

The 1st section of the act to provide for the erection and repair of bridges, etc., 1 R. S. 1876, p. 239, provides, "That whenever, in the opinion of the county commissioners, the public convenience shall require that a bridge should be repaired or built over any watercourse, they shall cause surveys and estimates therefor to be made, and direct the same to be erected."

The 2d section provides that, "If the estimate therefor shall exceed the ability of the road district in which such bridge is to be built, by the application of its ordinary road work and tax to perform, the county commissioners may make an appropriation from the county treasury to build or repair the same."

NOVEMBER TERM, 1880.　　237

The D. V. Turnpike Co. *v.* The Board of Com'rs, Bartholomew County.

The 3d section enacts that "Such board shall receive and appropriate all donations for the erection and repair of bridges ; they shall also aid the same, when of general importance, by advances from the county treasury, and shall make such regulations in reference to payments and kinds of bridges as to them shall seem proper : *Provided, however,* That if the board of commissioners of any such county shall not deem any such bridge of sufficient importance to make an appropriation from the county treasury for the erection or repairs thereof, the trustees of any township in which such bridge is situate, may appropriate any part of the road tax fund in the township treasury for that purpose, if they shall deem it right and expedient to do so."

And section 11 provides that "The board of commissioners of such county shall cause all bridges therein to be kept in repair," etc.

It is thus seen that it is the duty of the board of commissioners to cause all bridges in the county to be kept in repair ; and the question arises whether the approaches to such bridges are to be deemed parts of the same, to be kept in repair by the county.

Upon this point there can be but little or no doubt. A bridge would be useless unless made accessible ; and the approaches are as necessary as the structure itself. It is said that "The term bridge imports not only the structure itself and its approaches, but its abutments and embankments and railings, all of which must be kept so furnished that travellers may safely pass." Shearm. & Redf. on Negligence, 3d ed., sec. 253.

By statute 22 Henry VIII, c. 5, it was enacted that "Such part and portion of the highways in every part of this realm, as well within franchise as without, as lie next adjoining to the ends of any bridges within this realm, distant from any of the said ends by the space of three hundred foot, be made, repaired, and amended as often as need shall require."

In *King* v. *West Riding of York*, 7 East, 588, Lord ELLENBOROUGH, C. J., said: "I consider it as having been laid down long ago by Lord COKE, that the 300 feet of highway at the ends of the bridge are to be taken as part of the bridge itself; being in the nature of the thing intimately connected with it, and the exact limits difficult in some cases to be ascertained from the continuation of arches beyond the sides of the river. The statute of Henry VIII meant to define the limit which perhaps was uncertain at common law; but the statute still proceeds on the assumption that there existed a common-law liability for the county to repair the highways at the ends of the bridge as well as the bridge itself, as appendages to it."

Again it was said, after citing and commenting upon some authorities, and particularly a case in the time of Edward III : "From this case it is clear, that in those days, the charge of repairing the highways at the ends of a bridge was considered as belonging *prima facie* to the party charged with the repair of the bridge itself. And the statute of Henry VIII may be considered as having specified the distance of 300 feet from the ends of bridges, for the purpose of reducing to more convenient certainty what should in all cases thereafter be considered as the extent and limit of this charge upon the county."

It seems to us to be clear from the foregoing considerations, that it is the duty of the county to keep the approaches to a bridge, as well as, and as a part of, the structure itself, in repair. We need not determine whether the statute of Henry VIII has been adopted as part of our law, and, therefore, whether the 300 feet is the limit fixed. If it has not, what would be regarded as the approaches would depend upon what would be reasonable under the circumstances and local situation in each case. *Commonwealth* v. *Inhabitants of Deerfield*, 6 Allen, 449.

It does not follow, however, that, because the county is

bound to cause repairs to be made to the approaches, the contract sued on is valid so far as it affects the approaches. The mode in which the county is bound to perform that duty is specially pointed out by statute, and a contract which contravenes that mode, and substitutes another, must be void. If the contract sued on is valid, and has been broken, the damages of the appellant must be paid out of the county treasury. But it was not contemplated that the expense of repairing bridges should be paid out of the county treasury, except upon a contingency. By the 1st section of the act above set out, when a bridge is to be repaired or built, the commissioners are to "cause surveys and estimates therefor to be made, and direct the same to be erected."

Why were surveys and estimates to be made? The 2d section answers this question. It is because the appropriation from the treasury depends upon the question whether the estimate exceeds the ability of the road district, by the application to the work of the ordinary road work and tax of the district. It was not contemplated that the expense should be borne by the county treasury, except the excess beyond the ability of the road district. If this contract were to be held valid, the county would have to pay all the expense of the repairs, in the way of damages, no portion falling upon the road district. The contract is in violation of the provisions of the statute and void.

The 11th section of the statute, making it the duty of the commissioners to cause all bridges in the county to be kept in repair, must be construed in connection with the 1st and 2d. While the commissioners must cause the bridges to be kept in repair, the expense must be borne by the road district, so far as it is able, according to the 2d section, and the residue by the county.

The 3d section provides that the commissioners shall aid in the erection and repair of bridges, when of general importance, by advances from the county treasury. The

contract can not be upheld by virtue of this section. A contract to make future repairs, and an advance from the county treasury, are different things.

The obligation to aid by advances from the county is not unconditional, as is seen by the proviso to the section. It depends upon whether or not the board of commissioners shall deem the bridge to be of sufficient importance to make an appropriation from the county treasury for the erection or repair thereof. The duty of the board in making or withholding advances from the county treasury involves a question of judgment as to the importance of the bridge, and this judgment must be exercised as to the importance of the bridge at the time an advance is made. The board could not, by a contract to make advances in the future, preclude itself or its successors from the right and duty to determine, at the time an advance is sought, whether the bridge has the importance required, in order to justify an advance from the county treasury.

The judgment below is affirmed, with costs.

## ON PETITION FOR A REHEARING.

Woods, J.—The appellant asks a rehearing "upon the question of the validity of the contract, because a survey and estimate of the work were not made."

Counsel for the appellant says: "As I understand the opinion of the court, the approach is a part of the bridge, and the repair thereof is within the purview of the powers of the board of commissioners, but that the exercise of that power is *limited* to cases where plans and specifications have been first made. The duty to cause repairs by section 11 of the bridge law (1 Davis R. S. 240) is mandatory. But, as I understand the opinion of the court, a contract either to build or repair a bridge is void unless plans and specifications have been first made." And, after reference to and

quoting from his former brief to show that the provision for plans and specifications is merely directory, the counsel urges that the question whether the same is mandatory or directory is far-reaching, and if held mandatory the decision overturns a long line of decisions, to the effect that "when the mode of exercising the power is not expressly prescribed and *limited*, it is directory merely. *The Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; 1 Dillon Munic. Corp., sec. 373; *The United States* v. *Fillebrown*, 7 Pet. 28; Angell & Ames on Corp., secs. 294, 328, 697; *The State, ex rel. The City of Columbus*, v. *Hauser*, 63 Ind. 155."

We do not deem it necessary to dispute the importance of the subject or to question the conclusion contended for. It is enough that there is nothing in the opinion of the court, as delivered by WORDEN, J., which can properly be deemed to determine, or even indicate, a construction of the statute in respect to the proposition advanced by counsel. Whether, without first causing the plans and specifications to be prepared, a board of county commissioners can make a valid contract for the repair of a bridge, is a query entirely foreign to the purpose for which reference was made in our opinion to the statute in question and a statement given of its provisions. Whether its provisions in the respect mooted are mandatory or directory merely, the statute stands as the rule of action for the commissioners in the matters embraced in those provisions, and any contract, by which the board may attempt to impose on itself a different or inconsistent rule of action in reference to those matters, must be held invalid. Such we deemed to be the contract in suit, and such we still deem it. If the law gives the commissioners a discretion in reference to plans and specifications, and as to imposing the expense of repairs upon the township, this contract, if upheld, takes away or at least embarrasses that discretion, and is therefore invalid. This is the argument of the opinion, and we adhere to it.

Another proposition may be advanced here : By law the board of commissioners of a county; upon proper application and procedure, has power to vacate or change the location of any highway. By such vacation or change of the highway which passes over the bridge in question, the appellee might be released from all liability, under the law, to keep up and repair this bridge and its approaches, but this contract, if upheld, deprives the board of the right to exercise this jurisdiction without incurring liability for damages for a breach thereof.

We have carefully reconsidered the argument made and authorities cited by counsel for the appellant, but are able to perceive no good reason why a rehearing should be granted.

The petition is overruled, with costs.