## MUNCIE NATURAL GAS COMPANY *v.* CITY OF MUNCIE.

[No. 19,805.   Filed February 18, 1903.]

MUNICIPAL CORPORATIONS. — *Fixing Price of Natural Gas.* — *Ultra Vires.*—Where a natural gas company continues to use the streets of a city to distribute natural gas to private consumers by virtue of an accepted ordinance fixing the price of gas to consumers, it can not question the right of the city to enter into such contract.  *pp. 99–105.*

SAME.—*Natural Gas.*—*Price to Consumers.*—*Injunction.*—A city may enjoin a natural gas company from operating under a franchise granted by such city to furnish gas to the citizens thereof, where the company is operating in violation of a provision of the franchise fixing the price of gas to consumers.  *pp. 105–112.*

EQUITY.—*To Avoid Multiplicity of Suits.*—Where a party is entitled to legal relief, and there exists between him and a number of others entitled to relief a common interest, as against another party that can be determined by one suit, such fact affords a distinct basis for an appeal to equity.  *p. 110.*

APPEAL AND ERROR.—*Harmless Error.*—Where the special findings set out sufficient facts to warrant a decree under the amended second paragraph of complaint, error, if any, in sustaining a demurrer to the first paragraph of complaint, was harmless.  *p. 113.*

SAME.—*Special Finding.*—A motion for a supplemental finding does not present any question.  *p. 113.*

SAME.—*Record.*—*Motion to Modify Decree.*—Where a motion to modify the decree is not incorporated in the bill of exceptions, or otherwise made a part of the record, the question is not before the Supreme Court.  *p. 113.*

MUNICIPAL CORPORATIONS.—*Records of Common Council as Evidence.*— The record of the common council of a city showing the rejection of a schedule of gas rates submitted by a gas company is proper evidence of the fact of such rejection, where a certified copy of the resolution was served upon the company.  *pp. 113, 114.*

| | |
|---|---|
| 160 | 97 |
| 161 | 601 |
| 162 | 43 |
| 160 | 97 |
| 163 | 91 |
| 160 | 97 |
| 166 | 196 |
| 160 | 97 |
| 169 | 356 |
| 169 | 632 |
| 160 | 97 |
| 171 | 659 |

From Randolph Circuit Court; *A. O. Marsh,* Judge.

Suit by the city of Muncie against the Muncie Natural Gas Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*James Bingham* and *Jesse Long,* for appellant.

*Frank Ellis, Rollin Warner* and *A. W. Brady,* for appellee.

GILLETT, J.—Appellee instituted this action to restrain appellant from violating a special negative covenant, in a contract between said parties, regarding the maximum price of natural gas to be furnished by appellant to the inhabitants of said city. The amended complaint was in two paragraphs, to each of which a demurrer was overruled. Appellant answered in three paragraphs, one of which was a general denial. Demurrers were sustained to the other paragraphs of answer. Upon the request of each of the parties, the court, after a trial, made a special finding of the facts, and stated its conclusions of law thereon. A decree was rendered in favor of appellee.

So far as necessary to the consideration of this case, the facts so found specially are, in substance, as follows: On the 7th day of December, 1886, appellee passed an ordinance, that was accepted by appellant on the 21st day of December, 1886, authorizing appellant to construct and maintain a system of pipes beneath the streets and alleys of said city for the purpose of furnishing and selling natural gas to its inhabitants generally. The twelfth section of the ordinance contained the following *proviso:* "Provided, that in no case shall the total cost to such consumers for private purposes of such gas at any time exceed three-fourths of the present current price of wood or coal for fuel, or of artificial gas for lighting; that the price of natural gas to private consumers for heating purposes shall be regulated by a schedule of prices submitted by the board of directors to the common council of said city at the beginning of each fiscal year, and that said company shall not, in any

manner or for any purpose whatever, exceed the prices so submitted for that year, which schedule shall not exceed the price above stated in this section, said present price of wood being $2.50 per cord; of anthracite coal, $6 per ton; of soft coal, $4 per ton, and of artificial gas, $1.80 per thousand cubic feet." It is further found that said ordinance is still in force; that the appellant laid and still maintains the system of pipes provided for in said ordinance, and is engaged in the business of furnishing natural gas to the inhabitants of said city for heating and lighting purposes for hire; that on the 17th day of September, 1900, appellant submitted to the common council of said city a schedule, which is set out, of prices to be charged private consumers for the year beginning on the 1st day of October, 1900; that the city council investigated and considered such schedule, and, by resolution, found and declared that the prices in said schedule were excessive, and ordered and directed the appellant to submit a new schedule, which it refused to do. The findings sufficiently show that the schedule submitted provided for prices in excess of the provisions of the ordinance. It was further found by the court that since the 1st day of November, 1900, the appellant had been, and was at the time of the institution of the suit, charging the prices to consumers fixed in said schedule, under threats to discontinue the service of such consumers as refused to pay on the basis of said schedule, and that it threatens and intends to continue to charge and enforce the payment by all of its consumers of the rates set forth in said schedule. It is also found that since the 1st day of October, 1900, appellant has had more than 3,000 of said consumers in said city, who have, at great expense, fitted their residences with pipes and other fixtures to use natural gas, and that they can not procure said gas except from the appellant. It is unnecessary to set out the conclusions of law.

The first contention of appellant's counsel is that the city had no authority to enter into a contract fixing the maxi-

mum rates to be charged the inhabitants of said city, and
that therefore the contract was *ultra vires* and void.   We
have to deal here with a question of *ultra vires* in its true
sen̄se; that is, where the act is claimed to be *ultra vires*
the corporation itself.   Municipal corporations possess and
can exercise such powers only as are granted by the legis-
lature in express words, and those necessarily or fairly im-
plied or incident to the powers expressly granted, and those
essential to the declared objects and purposes of the cor-
poration.   Dillon, Mun. Corp. (4th ed.), §§89, 90; Smith,
Mun. Corp., 562, and cases cited; *Pittsburgh, etc., R. Co.*
v. *Town of Crown Point,* 146 Ind. 421, 35 L. R. A. 684;
*Bogue* v. *Bennett,* 156 Ind. 478, 83 Am. St. 212; *Walker*
v. *Towle,* 156 Ind. 639, 53 L. R. A. 749; *Lake County
Water & Light Co.* v. *Walsh, ante,* 33.   As said by Mr.
Dillon: "The general principle of law is settled beyond con-
troversy, that the agents, officers, or even city council of a
municipal corporation, *can not bind the corporation* by any
contract which is *beyond the scope of its powers,* or entirely
*foreign* to the purposes of the corporation, or which (not
being legislatively authorized) is against public policy.
This doctrine grows out of the nature of such institutions,
and rests upon reasonable and solid grounds.   The inhabi-
tants are the corporators; the officers are but t̄he public
agents of the corporation.   The duties and powers of the
officers or public agents of the corporation are prescribed by
statute or charter, which all persons not only may know, but
are bound to know.   The opposite doctrine would be fraught
with such danger and accompanied with such abuse that it
would soon end in the ruin of municipalities, or be legisla-
tively overthrown.   These considerations vindicate both the
reasonableness and necessity of the rule that the corporation
is bound only when its agents or officers, by whom it can
alone act, if it acts at all, keep within the limits of the
chartered authority of the corporation.   The history of the
workings of municipal bodies has demonstrated the salu-

tary nature of this principle, and that it is the part of true wisdom to keep the corporate wings clipped down to the lawful standard." Dillon, Mun. Corp. (4th ed.), §457. But notwithstanding this background of inhibition, we think that it may be affirmed that appellee had power to enter into the contract in question. Section 61 of the act of March 14, 1867 (Acts 1867, p. 33, §3623 Burns 1901), provides that: "The common council shall have exclusive power over the streets, highways, alleys and bridges within such city." Natural gas is a public utility that can not be obtained by the citizens of a municipality generally, except as it is conducted in pipes along the public ways of the city. The grant of exclusive power to the common council over such ways comprehends the right to permit gas companies to use the streets. If the common council may permit a natural gas company to use the streets without any conditions annexed, except such as the law attaches, it is not perceived why, as in this case, in making provision for supplying natural gas to all of the inhabitants of the city, it may not protect such inhabitants against extortion by providing that the company shall not charge in excess of certain prices for its service. The right to annex terms by way of limitation upon the authority of the grantee in such cases has been often affirmed by this court. *Western Paving, etc., Co.* v. *Citizens St. R. Co.,* 128 Ind. 531, 10 L. R. A. 770, 25 Am. St. 462; *City of Indianapolis* v. *Consumers Gas Trust Co.,* 140 Ind. 107, 27 L. R. A. 514, 49 Am. St. 183; *Cambria Iron Co.* v. *Union Trust Co.,* 154 Ind. 291, 48 L. R. A. 41. And see *City of Noblesville* v. *Noblesville Gas, etc., Co.,* 157 Ind. 162, 169.

In *City of Indianapolis* v. *Consumers Gas Trust Co., supra,* it was said: "There was no compulsion on the part of the appellant to grant the privilege to use its streets to any particular company. It was within its discretion to give or not to give its consent, and it had the right to withhold it from all gas companies. *Citizens Gas, etc., Co.* v.

*Town of Elwood,* 114 Ind. 332. It was not limited alone to the granting of this franchise, but it had the right to prescribe and impose terms and conditions. Dillon, Mun. Corp., §706; Wood, Rys., 2d vol., 986; Elliott, Roads and Sts., 565. When these terms and conditions, proposed by the appellant, were accepted by the appellee and complied with, it became a binding contract. *Western Paving and Supply Co.* v. *Citizens St. R. Co.,* 128 Ind. 531."

In *Los Angeles City Water Co.* v. *City of Los Angeles,* 88 Fed. 720, 731, the court said: "In procuring water, or any other commodity, by purchase, one of the first things to be considered and agreed upon is the matter of price. Therefore, to hold that general power, without limitation, in a municipal corporation, to supply the city with water, does not include power to agree upon price, it seems to me would be a solecism."

The grant in this case may be said to rest upon the business or proprietary power of the city, as distinguished from its governmental or legislative power. *City of Indianapolis* v. *Consumers Gas Trust Co.,* supra; *Illinois Trust, etc., Bank* v. *City of Arkansas City,* 22 C. C. A. 171, 76 Fed. 271, 34 L. R. A. 518; *Safety, etc., Cable Co.* v. *Mayor, etc.,* 13 C. C. A. 375, 66 Fed. 140; *State, ex rel.,* v. *Mayor, etc.,* 19 Mont. 518, 49 Pac. 15.

It is argued by counsel for appellant that if the common council may contract that natural gas rates shall not be in excess of a particular scale, it may also exercise a general supervision over those who enter into other contracts with the inhabitants of the city. Municipalities can not, of course, exercise any such paternalism as that. They can not, under existing legislation, exercise the legislative power to fix rates in any case; but we perceive no reason, in view of the condition of legislation at the time the ordinance in question was accepted, why it was not competent for appellee to annex the terms complained of to the grant of the right to use its streets. We are not required in this case

to consider the effect of subsequent legislation.   But even if there were a technical want of power upon the part of the city to enter into a contract establishing maximum rates for natural gas service, yet we do not think that appellant, while enjoying the fruits of the contract, can attack it, notwithstanding the fact that the law of *ultra vires* is more strict in its application to public than to private corporations.

Counsel for appellant seem to think that the cases in this State are somewhat out of accord with those of the United States Supreme Court, which has followed the English cases.   The leading case in the United States on this subject is *Central Transportation Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, wherein it is affirmed that partly executed contracts *ultra vires* the corporation itself are void as to both parties; that they can not be affirmed by estoppel or otherwise, and that, where the parties have so far acted upon such contracts that they can not be restored to their original situation, the court is limited to the granting of such relief, if any, as can be given independently of the contract.   The declarations of the case mentioned are no broader than those found in *Board, etc.,* v. *Lafayette, etc., R. Co.,* 50 Ind. 85, 112, wherein it is declared that a corporate "contract *ultra vires* the charter is void, and can not be made valid by any subsequent act of the corporation, because there is no residuary power to confirm it;" and that "If the act is *ultra vires* the corporation, it is void, and no one is bound."

That all power not expressly or impliedly granted to corporations is withheld, is a rule that the authorities without division apply in testing the validity of the purely executory contracts of corporations; but in so far as the defense of *ultra vires* to a contract that has been partly executed is concerned, we must look to the cases, rather than to the lexicographers, for a definition of the term *ultra vires.* Without attempting to cover the whole ground, it may be

said that if a contract is of such character that had the corporation at once proceeded to execute it, its act would have been contrary to public policy, or expressly or impliedly prohibited by statute, or would, in any degree, disable the corporation from the performance of its statutory duties, the undertaking can not be enforced by either party. To this extent the cases, English, federal, and state, are in reasonable harmony. As illustrative of this view we cite *Franklin Nat. Bank* v. *Whitehead,* 149 Ind. 560, 39 L. R. A. 725, 63 Am. St. 302; *State, ex rel.,* v. *Hart,* 144 Ind. 107, 33 L. R. A. 118; *Brown* v. *First Nat. Bank,* 137 Ind. 655, 672, 24 L. R. A. 206; *Platter* v. *Board, etc.,* 103 Ind. 360; *Cullen* v. *Town of Carthage,* 103 Ind. 197, 53 Am. Rep. 504; *Miller* v. *Embree,* 88 Ind. 133; *City of Ft. Wayne* v. *Lehr,* 88 Ind. 62; *Driftwood Valley Turnpike Co.* v. *Board, etc.,* 72 Ind. 226; *Rothrock* v. *Carr,* 55 Ind. 334; *Burnett* v. *Abbott,* 51 Ind. 254; *Board, etc.,* v. *Lafayette, etc., R. Co., supra; Wrought Iron Bridge Co.* v. *Board, etc.,* 19 Ind. App. 672. On the other hand we have a number of cases, commencing with the leading case of *State Board, etc.,* v. *Citizens St. R. Co.,* 47 Ind. 407, 17 Am. Rep. 702, in which it is held, on the principle of equitable estoppel, that where there is a mere defect of power upon the part of the corporation to enter into the contract, a defendant, while enjoying the benefit of the contract, shall not be permitted to raise the question as to the power of the corporation. *Sturgeon* v. *Board, etc.,* 65 Ind. 302; *Poock* v. *Lafayette Building Assn.,* 71 Ind. 357; *Bicknell* v. *Widner School Tp.,* 73 Ind. 501; *Louisville, etc., R. Co.* v. *Flanagan,* 113 Ind. 488, 3 Am. St. 674; *Wright* v. *Hughes,* 119 Ind. 324, 12 Am. St. 412.

The cases last cited are not seriously, if in any respect, out of accord with the Supreme Court of the United States. In *Union Pac. R. Co.* v. *Chicago, etc., R. Co.,* 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265, it was pointed out that in a line of cases in that court, including *Central*

*Transportation Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, the contracts condemned as void were against public policy, and it was held that a contract as to which there was a doubt as to whether it was within the implied powers of a corporation was not to be condemned because of a remote chance that in the future it would partially disable the corporation from performing its charter duties.

The defense that a contract is *ultra vires* the corporation does not deserve the execration it has received, since in most instances there is a collateral remedy in cases where there ought to be one. Although such contracts are not necessarily illegal, the *ultra vires* doctrine has its roots, like the rule of *par delictum,* in public policy; and its chief value lies in the fact that it is a brake upon improper corporate action, more efficacious, perhaps, in its practical results than the public remedy by information. As to cases, however, of mere defects of power, we think that it should be held, in accordance with the clear weight of authority in the United States, that, while the defendant retains the benefit of the contract, the state alone can raise the question. Tested by this consideration, we hold that while the appellee continues to use the streets of the city of Muncie to distribute natural gas to private consumers, by virtue of said accepted ordinance, it can not question the right of the city to enter into such contract.

The next question is, can the city maintain an action by way of injunction to enforce the contract? It is objected that as the city is not alleged to be a consumer, the inhabitants of the city using the gas can alone sue for the invasion of their rights; and it is further objected that, in any event, injunction on behalf of the city will not lie. As a step in the solution of these questions, we shall consider who it is that brings this action. It is not the common council, for its members merely represent the municipality. The city sues, and the city is composed of the inhabitants of the

locality.    *Citizens Gas, etc., Co.* v. *Town of Elwood,* 114
Ind. 332; *Baumgartner* v. *Hasty,* 100 Ind. 575, 50 Am.
Rep. 830; *Strosser* v. *City of Ft. Wayne,* 100 Ind. 443.
The rule, both in England and the United States, except as
changed by statute, is that it is the attorney-general, as the
representative of the public, who sues for invasions of the
public right, whether by way of purpresture or nuisance or
because of corporate excess.    *Attorney-General* v. *Richards,*
2 Anst. 603; *Attorney-General* v. *Forbes,* 2 Myl. & Cr. 123;
*Mayor, etc.,* v. *Alexandria Canal Co.,* 12 Pet. 91, 9 L. Ed.
1012; *United States* v. *Bell Telephone Co.,* 128 U. S. 315,
9 Sup Ct. 90, 32 L. Ed. 450; *Coosaw Mining Co.* v. *South
Carolina,* 144 U. S. 550, 12 Sup. Ct. 689, 36 L. Ed. 537;
*In re Debs,* 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092;
*Columbian Athletic Club* v. *State, ex rel.,* 143 Ind. 98, 28
L. R. A. 727, 52 Am. St. 407; *State* v. *Ohio Oil Co.,* 150
Ind. 21, 47 L. R. A. 627; *Attorney-General* v. *Chicago,
etc., R. Co.,* 35 Wis. 425, 482; *Attorney-General* v. *Ja-
maica, etc., Corp.,* 133 Mass. 361; *Attorney-General* v.
*Delaware, etc., R. Co.,* 27 N. J. Eq. 631; *Stockton* v.
*Central R. Co.,* 50 N. J. Eq. 52, 24 Atl. 964, 17 L. R. A.
97; *Commonwealth* v. *Rush,* 14 Pa. St. 186; *Kerr* v. *Trego,*
47 Pa. St. 292.

While the state may elect to bring an action to forfeit the
franchise of a corporation created by it, because of an *ultra
vires* act that tends to the prejudice of the public, yet it is
not bound to do so, but may invoke the powers of its courts
having general chancery jurisdiction to keep the corpora-
tion within the path marked out for it by statute.    See cases
last above cited.    The state may well complain, where a
corporation is indulging in *ultra vires* acts to the prejudice
of the public, that the corporation has violated its implied
contract to observe the laws of the state.    *Thomas* v. *Rail-
road Co.,* 101 U. S. 71, 25 L. Ed. 950; *Columbian Athletic
Club* v. *State, ex rel., supra.*    This view was forcibly ex-

pressed by McGill, chancellor, in *Stockton* v. *Central R. Co., supra,* as follows: "Water, gas, telegraph, and similar corporations also render to the public benefits which readily suggest themselves to the mind as it contemplates their work. While the state confers special privileges upon these favorites, it at the same time exacts from them duties which also tend to the public welfare. The whole scheme of the laws of their organization is to equip and control them as instruments for the public good. Such corporations hold their powers not merely in trust for the pecuniary profit of their stockholders, but also in trust for the public weal. The impress for public good is stamped upon their very being, and it becomes a duty which, though not prescribed in express language of the law, is to be implied from the nature of every power conferred. When, therefore, it appears that such a corporation, unmindful of this plain duty, acts prejudicially to the public in order to make undue gains and profits for its stockholders, it uses its powers in a manner not contemplated by the law which confers them. The use becomes abuse, and is tantamount to excess of power."

We, of course, realize that the people of the city of Muncie are not the public at large, and that the breach of contract here complained of is not an *ultra vires* act. But the question is whether the analogy is not sufficiently great to justify courts of chancery, whose peculiar boast is the adaptability of their remedies, to extend relief where an adequate remedy is wanting, in granting relief in cases of this kind. It was declared by Lord Chancellor Cottenham, in *Taylor* v. *Salmon,* 4 Myl. & Cr. 134, 141, that it is the duty of a court of equity "to adapt its practice and course of proceeding as far as possible to the existing state of society, and to apply its jurisdiction to all those new cases which, from the progress daily making in the affairs of men, must continually arise, and not, from too strict an ad-

herence to forms and rules established under very different circumstances, decline to administer justice, and to enforce rights for which there is no other remedy."

The people of the city of Muncie—to borrow somewhat from the thought of one of our cases—are the public of that locality, and it appears that the appellant is doing acts to the prejudice of the inhabitants of the city, while exercising a public function by virtue of a contract that has admitted it to the streets of the municipality. The analogy is so close between the case of the state suing to enjoin an *ultra vires* act by one of its corporations and the case in hand that we think it ought to be held that the city may maintain an action to restrain appellant, if the facts otherwise warrant equitable intervention. But this case is in principle within existing adjudications as to the power of the municipality to sue on behalf of its inhabitants. In *Mayor, etc., v. Bolt,* 5 Ves. Jr. 129, the court of chancery granted an injunction, upon the application of the city of London, to restrain acts that amounted to a nuisance by endangering the lives of the inhabitants.

The case of *Trustees, etc., v. Cowen,* 4 Paige 510, 27 Am. Dec. 80, was a suit to enjoin the unauthorized erection of a structure upon grounds dedicated to the public of a municipality. In disposing of the case, Chancellor Walworth, after stating that he did not feel disposed to go the length of holding that the legal title of the land was vested in the village, said: "I can see no valid objection to considering the corporation as the proper representative of the equitable rights of the inhabitants of the village to the use of the public square, so as to authorize the filing of a bill by the corporation, in this court, to protect those equitable rights against the erection of this nuisance."

*Municipality of the Town of Guelph v. Canada Co.,* 4 Grant Ch. (Upper Can.) 632, was an action to restrain the defendant therein from selling certain property within the town that it was claimed had been dedicated by the defend-

ant in laying out the lands of the municipality. It was objected that the attorney-general was not a party, but the court said: "The legislature has entrusted the plaintiffs with extensive powers in relation to the public property of the town of Guelph, and has at the same time devolved upon them the duty of protecting the rights of the public from infringement. Now it can not be denied that the inhabitants of Guelph have a peculiar interest in the market place. The infringement complained of would obviously inflict a special injury on the inhabitants of Guelph. A private individual sustaining special damage is allowed to file a bill of this sort, and it is difficult to understand why this municipality should not have the same right."

In *Inhabitants, etc.,* v. *Easton, etc., R. Co.,* 24 N. J. Eq. 217, the court cited approvingly the case of *Trustees, etc.,* v. *Cowen, supra,* on the proposition as to the right to an injunction, and pointed out the fact that a township sustains a special injury by the destruction of its highways, beyond that of the public in general, because of its burden of repair. See, also, as to the right of the city to sue, *State, ex rel.,* v. *Bridgeton, etc., Traction Co.,* 62 N. J. L. 592, 43 Atl. 715, 45 L. R. A. 837; *Florida, etc., R. Co.* v. *State, ex rel.,* 31 Fla. 482, 13 South. 103, 34 Am. St. 30, 20 L. R. A. 419; *Williams* v. *Smith,* 22 Wis. 594.

If we appeal to the analogous right of the state to restrain nuisances, or to prevent its corporations from committing *ultra vires* acts, it may be affirmed that it is not necessary to show that the city has itself sustained damage when it sues for the benefit of its inhabitants, but that it is enough to show that the act tends to injure the public of the municipality. *Grey* v. *Greenville, etc., R. Co.,* 59 N. J. Eq. 372, 46 Atl. 638; *Attorney-General* v. *Shewsbury Bridge Co.,* L. R. 21 Ch. Div. 752. And see *Eel River R. Co.* v. *State, ex rel.,* 155 Ind. 433. In *Attorney-General* v. *Ely, etc., R. Co.,* 4 L. R. Ch. 194, it was said: "The question is, whether what has been done has been done in accordance

with the law; if not, the attorney-general strictly represents the whole of the public in saying that the law shall be observed."

We really need no analogies, however, to uphold the right of appellee to maintain this suit. The city, as a corporate entity, represents all of its inhabitants. The streets over which it has exclusive power are being used by appellant under a contract with the city that appellant has broken. This would entitle the city to at least nominal damages at law; and its right to restrain the further breach of the contract, which amounts to a negative specific enforcement of the contract, can be affirmed on the ground that it will avoid a multiplicity of actions. This is not an independent source or occasion of jurisdiction, but, as laid down by Professor Pomeroy, where a party is entitled to even legal relief, and there exists between him and a number of others entitled to relief a common interest, relation, or question, as against another party, that can be determined by one suit, such facts afford a distinct basis for an appeal to equity. Pomeroy, Eq. Jurisp. (2d ed.), §243 *et seq.* In such cases it is not necessary that the party suing should himself be threatened by, or compelled to resort to, numerous actions to vindicate his right, because considerations of governmental policy enter into the question. As applied to this case, it is a matter of public expediency that by one suit rights shall be established for the time that the injunction has to run, instead of hundreds of the inhabitants of the city being each compelled to sue to vindicate his right, or otherwise to submit to a small, but annoying, injustice. *Attorney-General* v. *Chicago, etc., R. Co.,* 35 Wis. 425.

But the appellee had a right to appeal to equity on another ground. The city was a party to the contract, and it complains of the breach of a negative covenant. This is a case, so far as the covenant is concerned, for a negative specific performance by means of an injunction. A court

of equity, where there is a basis for the assertion of its jurisdiction, will not suffer men to depart from their agreements at pleasure, leaving the party with whom they have contracted to the mere chance of damages which a jury may give. *Lumley* v. *Wagner,* 1 DeG., M. & G. 604, 619; *De-Mattos* v. *Gibson,* 4 DeG. & J. 282. A well known writer on injunctions, after stating that there may be cases where a court of equity would refuse to interfere where it is clear that the damages for a breach would be inappreciable, says: "A covenantee has the right to have the actual enjoyment of property *modo et forma* as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on the plaintiff, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be preserved as far as he is concerned, or whether he shall permit it to be violated. It is not necessary that he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract entered into by him, the court will protect the plaintiff in the enjoyment of the right which he has purchased." Kerr, Injunctions, *532.

Appellant's counsel contend that the contract in question was made for the exclusive benefit of third persons, and that, therefore, the city is not the real party in interest within §251 Burns 1901. Assuming the correctness of this position, it does not follow that the city may not sue, for the next section of the statute provides: "An executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue, without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another." §252 Burns 1901. We think it may be properly said, in view of the contract, that, if the city can not sue on its own account, it appears that it is the

trustee of an express trust within the meaning of the statute last mentioned.  The language of the covenant is not as clear as it might be, but, so far as objection to it is pointed out, we think that it is capable of construction.  The first point to ascertain is what the parties themselves meant and understood, but courts can not adopt a construction of a legal instrument which would do violence to the rules of language or to the rules of law.  2 Parsons, Contracts (8th ed.), 494.

It is unnecessary to determine whether section twelve of the ordinance gave the city any power to regulate charges to private consumers within the maximum scale of charges; but it is clear, from the language twice repeated, that there was to be a maximum scale.  For heating purposes, the price of gas was not to exceed "three-fourths of the present current price of wood or coal for fuel," and the cost of natural gas for lighting was not to exceed a like ratio to the cost of artificial gas.  Then follows the provision as to the submission of the schedule of charges for heating purposes; next, the provision that the "schedule shall not exceed the price above stated," and, finally, the then current prices of wood, coal, and artificial gas are fixed.  The parties sought a standard and it ought to be the endeavor of the court, so far as possible, to give to that standard the element of certainty, and not to import elements of uncertainty into it that the parties did not see fit to mention.  If there be any question concerning the correctness of this construction, the doubt must be solved in favor of the city, because public contracts should be construed, not *contra proferentem,* but liberally in favor of the public.  *Indianapolis, etc., St. R. Co.* v. *Citizens St. R. Co.,* 127 Ind. 369, 8 L. R. A. 539; *Western Paving, etc., Co.* v. *Citizens St. R. Co.,* 128 Ind. 525, 10 L. R. A. 770, 25 Am. St. 462; *Cambria Iron Co.* v. *Union Trust Co.,* 154 Ind. 291, 48 L. R. A. 41; *Slidell* v. *Grandjean,* 111 U. S. 412, 4 Sup. Ct. 475, 28 L. Ed. 321; *Joy* v. *St. Louis,* 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843;

*Coosaw Mining Co.* v. *South Carolina,* 144 U. S. 550, 12 Sup. Ct. 689, 36 L. Ed. 537; Beach, Contracts, §726. This principle of construction, it was said, as applied to public grants, in the Slidell case, and also in the Coosaw Mining Company case, "Is a wise one, as it serves to defeat any purpose, concealed by the skilful use of terms, to accomplish something not apparent on the face of the act, and thus sanctions only open dealing with legislative bodies."

The views that we have expressed in this opinion dispose of all questions concerning the rulings on the pleadings, except as to the sufficiency of the first paragraph of complaint; but as the special findings set out sufficient facts to warrant a decree under the amended second paragraph of complaint, the error, if any, in sustaining a demurrer to the first paragraph of complaint was harmless.

The court did not err in overruling the motion for a *venire de novo,* so called. The finding complained of stated matters of ultimate fact, and did not state the whole issue, as counsel assume. The motion for a supplemental finding does not present any, question. *Sharp* v. *Malia,* 124 Ind. 407; *Bunch* v. *Hart,* 138 Ind. 1; Elliott, App. Pro., §757. We do not find that the motion to modify the decree was incorporated in a bill of exceptions, or that it was otherwise made a part of the record, and therefore the question is not before us. *Adams* v. *La Rose,* 75 Ind. 471; *Forsythe* v. *Kreuter,* 100 Ind. 27; *People's Sav., etc., Assn.* v. *Spears,* 115 Ind. 297; §662 Burns 1901.

We can not disturb the finding on the evidence. There was a vast quantity of testimony offered as to the comparative values of the fuels and lights in question, and we can not say that the court erred in its conclusions of fact concerning the same.

The record of the common council showing its rejection of the schedule submitted by appellant was proper substantive evidence of the fact of such rejection, as a certified copy of the resolution was served upon appellant. After the lat-

ter had submitted its schedule of rates for the then ensuing year, it was incumbent upon appellee to reject it before it could sue; and we can not assume that the learned judge who tried this case gave credence to any of the interwoven declarations of fact not relevant to the question in issue.

Complaint is made by appellant's counsel as to the action of the trial court in the admission and exclusion of certain items of evidence not already directly or impliedly ruled on in the course of this opinion. For the most part these objections are insufficiently briefed. Elliott, App. Pro., §445; *Harrison* v. *Hedges,* 60 Ind. 266; *Bray* v. *Franklin Life Ins. Co.,* 68 Ind. 6; *Northwestern Mut. Life Ins. Co.* v. *Hazelett,* 105 Ind. 212, 55 Am. Rep. 192. The other objections can be disposed of on practice grounds, relative to the condition of the transcript, or for the reason that the objections are not well taken.

Judgment affirmed.