THE CLEBURNE WATER, ICE & LIGHTING CO. v. CITY OF CLEBURNE.

No. 1500.

**1.  Special Demurrers—Harmless Error.**

Error of the court in overruling certain special demurrers is not material, where, notwithstanding the defects attacked by the demurrers, there were sufficient allega tions in the petition to constitute a good cause of action.

**2.  Parties Plaintiff—Action by City Against Water Company.**

Where a city has contracted with a water company to furnish water to its citizens, an action against the company to restrain it from enforcing higher rates than those stipulated in the contract, is properly brought by the city, instead of by the citizens.

**3.  Injunction—Proper Remedy, When.**

Where a city has contracted with a water company to furnish water to the citizens at certain stipulated prices, and the water company raises the prices and threatens to cut off the water supply if such higher prices are not paid, the city is entitled to an injunction as the appropriate remedy, because of the utter uncertainty in any calculation of damages for the breach of such contract.

**4.  Construction of Contract—Water Company Rates.**

A contract between the city of C. and a water company stipulated that the water company "proposes to charge consumers of water the same rates as are now charged at Waco, Texas, by the Bell system of water works, or such other reasonable rates as from time to time shall be fixed by the city council of C.; it being expressly understood that the limits of said rates shall not be less than is allowed by cities of like size and population in this State." Held, that the contract fixes the Bell rates as a basis, and that the company was bound to furnish water at that rate until the city council should fix other reasonable rates, not to be less than those allowed by cities of like size and population; that without such action by the city council, the company was not authorized to charge a higher rate than the Bell rates; and that the facts and circumstances attending the execution of the contract, as also the fact that the company had for four years furnished water at the Bell rates, could be considered in determining the intention of the contract as to the rates.

APPEAL from Johnson.  Tried below before Hon. J. M. HALL.

*W. F. Ramsey* and *Poindexter & Padelford*, for appellant.—A municipal corporation, organized under the laws of this State, is not authorized to bring suit for nor restrain by injunction, injuries sustained by others, under a contract made with itself.  City of New Haven v. Railway, 25 Atl. Rep., 316.

2.  For the alleged threatened wrongs, injuries, trespasses, to the citizens of Cleburne, set forth in appellee's petition, such persons so injured and damaged, or threatened with such injury and damage, are entitled to prosecute their suit, or suits, in their own names, and the relief to which said citizens, any one or more of them, may be entitled, is personal, and recoverable in their own names and at their own suit, and not at the suit of appellee.  Ebell v. Bursinger, 70 Texas, 120; Daniel's Chancery Practice (5 ed.), 181; Lumber Co. v. Water Supply Co., 12 S. W. Rep., 554; Smith v. Lewis, 3 B. Mon., 229; Allen v. Thomas, 3 Metc. (Ky.), 198; Ellis v. Harrison, 16 S. W. Rep., 100.

3.  The contracts pleaded by appellee, and attached to its petition as exhibits, clearly show that by the terms of the substituted proposi-

tion and contract of May 13, 1890, it was distinctly agreed that said Moss should, under same, have the right to charge reasonable and just rates to consumers of water, not to exceed, nor ever to be less than, rates charged for the same service in other cities of like size and population in this State.

*Davis & McKoy* and *W. H. Bledsoe*, for appellee.

RAINEY, ASSOCIATE JUSTICE.—The conclusions of fact as found by the court below, we find from the evidence to be correct, and the same are adopted as the conclusions of this court.

*Opinion.*—This is a suit by injunction, brought by the city of Cleburne, appellee, to enjoin the Cleburne Water, Ice and Lighting Company from charging the city and citizens of Cleburne a higher rate for water than the Bell system of rates, which rates it is alleged the said company, by contract, is only authorized to charge. The appellant's contention, in effect, is that under the contract it is not bound by the Bell rates, and that the same are confiscatory and unreasonable. That it is entitled to charge reasonable rates, and that the rates fixed by it are reasonable and just. The case was tried by the court without a jury, and judgment rendered for the city.

Appellant presents twenty-nine assignments of error, fourteen of which complain of the action of the court in overruling special demurrers to the petition. Some of the demurrers should have been sustained by the court, as some of the allegations were of such a character as to constitute no basis for a recovery.

But, notwithstanding these defects, there were sufficient allegations to constitute a good cause of action. Such allegations, in effect, were that there was a contract existing by which appellant was bound to supply the city of Cleburne and the inhabitants thereof with water at a specified rate; that a higher rate was demanded by appellant than authorized by said contract; that appellant was threatening to violate said contract by cutting off the supply of water, if said demand was not complied with, etc. As enough was alleged to constitute a good cause of action, and the cause having been tried by the court without the intervention of a jury, the failure to sustain the demurrers was not such error as requires the reversal of the judgment.

Some of the assignments relate to the admission of evidence, which we deem it unnecessary to discuss, as it is evident the same had no controlling influence in the decision of the cause.

There are only three controlling issues raised, and those are: 1. Has the city the right to maintain this action? 2. If so, is it entitled to an injunction? 3. Do the terms of the contract bind said company to the Bell rates?

1. These we will consider in the order named. Has the city the right to maintain this action? The principle arising under this propo-

sition is fully and ably discussed by Justice Brown of our Supreme Court in the case of House v. Houston Waterworks Company, 31 S. W. Rep., 179. That ¦was a case where a citizen of the city of Houston sought to recover of the waterworks company the value of property burned, the allegation of plaintiff's petition being, in substance, that the said company had failed to furnish water for the extinguishment of fires, as it had contracted to do with the city of Houston. The contract made with the city of Houston provided for the supplying of water to said city "for extinguishing fires, and for the protection of property of the inhabitants of said city," also that water should be furnished to private consumers at specified rates.

In these particulars that contract is substantially the same as the one here under consideration. In discussing the right of the individual citizen to sue for a breach of that contract, the court said: "There is no part of the contract which will justify the conclusion that the water company or the city contemplated that the water company should assume any duty to the citizens in the performance of this contract. Neither party contemplated that the water company should be obligated to the citizen."

In that case, as here, it was contended that the city in making the contract acted for the public, and for the benefit of the citizens, which made the performance thereof a public duty; hence, the citizen, and not the city, had the right to sue for a breach thereof. In discussing this point in the case above quoted, the court said: "It is true the city acted for the public just as every city does in every act it performs, and each citizen was in a sense interested and to be. benefited just as from the performance of any work for the city. But no citizen had such an interest as would give him a right of action for its breach, unless it was a public duty."

We think it clear from the foregoing that no public duty was imposed upon the appellant by the contract with the city, nor did any contractual relations exist between the appellant and the citizens of Cleburne that would give them the right to recover for a breach of the contract. It follows, we think, that as the city had undertaken to supply the citizens with water, and having contracted with appellant to perform that undertaking, and as the citizens could not sue, the city had the right to sue to enforce the performance thereof. The city not only had the right to sue to enforce the contract, but it was its duty to see that the contract was enforced, and the rights of the citizens protected thereunder.

2. The right of the city to an injunction is questioned; the contention being that there is an adequate and complete remedy at law.

It is a well settled rule of equity that, "if in an action at law the plaintiff can obtain full and adequate relief, a suit in equity for an injunction cannot be maintained by him." 10 Am. & Eng. Encyl. Law, 792. On the other hand, it is also a well settled rule "That, although the action at law will lie, yet if there is utter uncertainty in any calcula-

tion of damages from the breach of the covenants, and the measure of damages is largely conjectural, equity will intervene because of the inadequacy of the remedy." Wilkinson v. Colley, 30 Atl. Rep., 286.

The appellant had charged the citizens higher rates for water than the Bell rates provided for in the contract, and in the event of refusal to pay the higher rates, it would have cut off the supply of water. Had the supply been cut off, the citizens would have been damaged and no remedy existed therefor. In such a contingency, there is "utter uncertainty in any calculation of damages from the breach of the covenants, and the measure of damages is largely conjectural," and no full and complete relief could have been obtained in an action at law. The equitable proceeding by injunction, under the facts and circumstances of this case, in our opinion, was the only adequate remedy. School District v. Gas Co., 25 Atl. Rep., 868; Winfield v. Water Co., 32 Pac. Rep., 663.

3. Do the terms of the contract bind said company to the Bell rates? The wording of that part of the contract that raises this issue is as follows: "The said S. E. Moss proposes to charge consumers of water the same rates as are now .charged at Waco, Texas, by the Bell system of waterworks, or such other reasonable rates as from time to time shall be fixed by the city council of the city of Cleburne. It being expressly understood that the limits of said rates shall not be less than is allowed by cities of like size and population in this State."

The contention of appellant is, that "the Bell rates were not to obtain except and unless the rates therein set forth and contained should equal the rates charged in cities of like size and population as Cleburne in this State;" while appellee contends that under the contract the Bell rates should obtain until changed by the city council, and that no change greater than the Bell rates was ever to be made. This involves the proper construction to be given to the terms of the contract.

We are of opinion that the contract fixes the Bell rates as a basis, and that the company is bound to furnish water at that rate until the city council should fix other reasonable rates, and in the event the city council saw proper to change the rate, it could not fix a rate less than "is allowed by cities of like size and population as Cleburne in this State." From the facts and circumstances, it is evident that the contracting parties intended the Bell rates to prevail unless other cities of the character named fixed the water rate less than the Bell rates, in which case the city council of Cleburne would have the power to change the rates, provided a less rate was not fixed than allowed by such cities. It was not intended that the city council should fix rates higher than the Bell system.

This construction, we think, is borne out by the preamble to the second proposition submitted by Moss to the city council, which proposition was accepted and adopted in lieu of the original contract. Said preamble is as follows: "In view of the fact that objections have been made, and are being made by certain people in the city, to certain por-

tions of the propositions heretofore made by me, and accepted by your honorable body, and being desirous of retaining as far as possible the good will of the people of Cleburne, I have sought to obviate, as far as possible, those objections, and to that end here submit this as a substitute for said accepted proposition for the purchase of the Cleburne system of waterworks:"

This statement does not show the objections urged by "certain people of the city," but we find that the terms of the first contract relating to rates to be paid by consumers was changed. The first contract provided that "said Moss proposes to charge consumers of water the same rates as are now charged at Waco, Texas, by said Bell water system, the rates being the present adopted rates of said system." In the second contract the other clauses were added to this provision, as shown above. We take it, this change was made because the people objected to being bound absolutely to the Bell rate; not because the rate was too high at that time, as it was the lowest in the State, but because rates might become still lower, and they were not willing to be bound absolutely by the Bell rates when rates in the future might become less. Hence, the provision authorizing the city council to fix rates, with the limitation as to other cities, which limitation was for the protection of Moss against the fixing of rates by the council at less than those of other cities of like character in the State. He evidently was willing to abide by the Bell rates, but when the council undertook to change it, could not go below other cities of like size and population.

Again, for about four years after the contract was entered into the Bell rates were charged, and no change was attempted until a short time before the institution of this suit. While the using of said Bell rates as stated is not conclusive, nor would it control the express terms of the contract, yet, it is a strong circumstance pointing to the fact that the parties construed the contract in that light. It is a rule of construction that the intention of parties in making a contract will govern, if no violence is done to the express terms of the contract. City of Cincinnati v. Gas and Coke Co., 41 N. E. Rep., 239.

The appellant being bound to supply water at the Bell rates, it is unnecessary for us to consider whether the rates attempted to be charged by it are reasonable or unreasonable. If appellant entered into a bad contract, it must abide thereby, for in such a case the courts will afford no redress. Smith v. Waterworks Co., 16 South. Rep., 124.

The judgment is affirmed.

*Affirmed.*

Delivered March 14, 1896.

Writ of error refused.