## CHARLES B. SMITH & CO. v. DUNCAN.

### (No. 5331.)

(Court of Civil Appeals of Texas. Austin. April 8, 1914. On Motion for Rehearing, May 20, 1914.)

1. TRIAL (§ 156*)—QUESTIONS FOR JURY—NONSUIT.

In determining whether there is sufficient evidence to carry an issue to the jury, only plaintiff's evidence should be considered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 354–356; Dec. Dig. § 156.*]

2. SALES (§ 88*)—ACTIONS—PURCHASE PRICE.

In an action for the purchase price of a large quantity of cotton, which the seller claimed was to be fixed by the market price in a certain locality, evidence for plaintiff *held* sufficient to carry the issue whether that was the agreement between the parties to the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 248–250; Dec. Dig. § 88.*]

3. SALES (§ 77*)—ACTIONS—NOTICE OF SALE.

Where cotton was sold under an agreement that the sale price might be fixed at the market price of any day between delivery and the succeeding March, the seller, who notified the buyer's clerk, and attempted to notify the buyer, but was unable to see him, because of his illness, is entitled to have the sale price fixed as of the day he selected, notwithstanding he was unable to personally notify the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208–212; Dec. Dig. § 77.*]

4. SALES (§ 77*)—CONTRACTS—CONSTRUCTION.

Where cotton was sold under an agreement that the sale price could be fixed at the market price of any day selected by the seller between delivery and the succeeding March, and on the day selected by the seller the buyer was ill, and could not personally be notified, the buyer ratified the seller's selection, where, upon finally receiving notice of the seller's demand, he promised settlement as soon as he recovered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208–212; Dec. Dig. § 77.*]

5. SALES (§ 77*)—CONTRACTS—CONSTRUCTION—"OUR BASIS LIMIT."

Where cotton was sold under an agreement for settlement on the buyer's basis limit at any time between delivery and March 1st, the seller's option as to date, the buyer could not, because he was out of the market for two months, preclude the seller from selecting a day during one of those months as basis for settlement, for the words "our basis limit" usually mean the same thing as the market price, and the agreement that the seller should have his option as to selecting the day carried an implied agreement that the buyer should be in the market during the time specified, or, if not, that his basis would be the market price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208–212; Dec. Dig. § 77.*]

**6. APPEAL AND ERROR (§ 1068*)—REVIEW—HARMLESS ERROR.**

The giving of an erroneous instruction, which the verdict clearly showed the jury disregarded, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

**7. SALES (§ 54*)—CONSTRUCTION—INTERPRETATION OF PARTIES.**

Where a buyer acquiesced in the seller's interpretation of a contract for the sale of cotton, the price of which was to be determined with reference to the value of cotton thereafter, the courts will enforce the contract as construed by the parties; hence the refusal of an instruction correctly submitting the question as to the rights of the parties in case their minds never met was not error.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 152; Dec. Dig. § 54.*]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Action by F. M. Duncan against Charles B. Smith, doing business as Charles B. Smith & Co. From a judgment for plaintiff, defendant appeals. Affirmed.

John B. Durrett, of Belton, for appellant. J. H. Evetts, of Belton, Winbourn Pearce, of Temple, and A. L. Curtis, of Belton, for appellee.

JENKINS, J. On November 11, 1912, appellant, under the name of Charles B. Smith & Co., and appellee entered into a contract, whereby appellee agreed to sell and deliver to Chas. B. Smith on that date, and on subsequent dates, cotton, upon which appellant was to advance to appellee at the time of delivery about ten cents per pound, balance to be paid for at a price to be named by appellee between October 11, 1912, and March 1, 1913. This contract was oral, being made over the phone. Appellant at that time resided in Belton, and appellee in Killeen, some miles distant from Belton. There is no disagreement as to the terms of said contract, except that appellant contends that the price was to be determined by his "basis limit" on the day selected by appellee, and appellee contends that the price was to be the market price "basis middling" on said day in Belton. It is agreed that under this contract appellee delivered to appellant 618,431 pounds of cotton, which graded $28\frac{1}{4}$ points under middling. On the 27th day of November, 1912, appellee went to the office of appellant, for the purpose of informing him that he had selected that day as the one upon which to demand settlement for the cotton. Appellant was not in his office, but was at home sick. Appellees notified appellant's clerk, who was in charge of his office, that he desired a settlement on the basis of the market price of cotton on that day, which was $12^5/_{16}$. Thereafter, on the same day, appellee went to the home of appellant, for the purpose of seeing him and closing the deal, but was informed by appellant's wife

that appellant was too sick to see him. On the following day appellee requested the brother of appellant to go to see appellant, and inform him that he (appellee) had elected to close the deal on the previous day. The evidence leaves it uncertain as to whether or not appellant's brother discussed the matter with him at that time. Appellant remained sick and unable to transact business until the 20th of December, and was confined to his room until some time later. On December 20, 1912, appellee addressed the following letter to Smith & Peyton Hardware Company, Belton, Tex. Appellant was the president, business manager, and principal owner of the business of Smith & Peyton Hardware Company, and appellee supposed that they were interested in the deal. Such, however, was not the fact, as Smith transacted his cotton business under the name of Chas. B. Smith & Co. on his individual account. The letter referred to reads as follows:

"Dear Sirs: Regarding the settlement on the 1,188 bales of cotton which I shipped to you during this season on consignment, about which I have had considerable correspondence with your office, over the phone and otherwise, I will say that I will be glad to get an early settlement on this account. I am winding up my year's cotton business, and would like to get this off my hands. While there have been times when I could have sold for considerably more money, I will expect to settle on the basis of $12^5/_{16}$ B/M, as that was the price this was worth when I asked for settlement on the day before Thanksgiving last month. I took the matter up with your Mr. Stockton at that time, and, as Mr. Smith was not able to attend to the matter personally, I told Mr. Stockton that I would expect to settle on that basis. I am in need of the money, and, if agreeable to you, I will draw for the balance due me, guaranteeing both the weights and the grades. Hoping to be able to hear from you soon, I am, yours truly, [Signed] F. M. Duncan."

On December 23d, appellant wrote the following reply to said letter:

"Mr. F. M. Duncan, Killeen, Texas. Dear Sir: Your letter 20th inst. to Smith & Peyton Hardware Co. handed me today. While I own four-fifths of this concern's stock, it has no connection with my Western cotton business; hence Mr. Stockton has no authority to take up the matter with you. The moment I am able to get up, you and I will make satisfactory settlement of the consigned cotton. My doctor says it looks like January 1st. Yours truly, [Signed] Chas. B. Smith & Co., per C. M. S."

On the same day appellant sent appellee a draft for $3,000. At the market price of cotton in Belton on November 27, 1912, basis middling, the total value of the cotton delivered to appellant by appellee was $73,-361.37; allowing a credit for the amount paid by appellant, there would still be due appellee $6,570.54, which is the exact amount found by the jury, and for which judgment was rendered in appellee's favor.

[1, 2] Under his first, second, and third assignments of error, appellant insists that there was no evidence that the price of

cotton was to be fixed by the market price of cotton in Belton, Tex., but that the uncontradicted evidence showed that the price was to be fixed by appellant's "basis limit." In support of this contention, appellant testified that this was the contract which he made with appellee over the phone, and that on the following day, he sent appellee the following letter of confirmation:

"Oct. 12, 1912. Mr. F. M. Duncan, Killeen, Texas—Dear Sir: Confirming our conversation over the phone last night, beg to say that we will advance ten cents per pound, basis middling, on such cotton as you may ship us. We to use the cotton and settle with you on our basis limit at any time between now and March 1st, 1913, your option as to date. When you report the cotton as sold to us, settlement will be made between us at the difference between ten cents and the basis price you sell at. No charge to be made for interest or insurance. We presume you are shipping the 300 bales to-day. If you have more we will be glad to use it, not exceeding 1,000 bales on or about the same basis. Yours truly, Charles B. Smith."

While the testimony of appellant, corroborated by this letter, indicates that the price was to be fixed on *his* "basis limit," yet, in determining whether or not there is sufficient evidence to raise an issue for the jury, and whether the evidence sustains the finding of the jury, we must look to the testimony of appellee, and not that of appellant. Appellee testified that the contract, which, as above stated, was made over the phone, was that the cotton was to be paid for at the market price in Belton, basis middling; that he never saw this letter of confirmation until after this controversy arose between the parties. It is true that he also testified that, if he had received such letter, he would probably have accepted it as a correct statement of their contract, but he explains this by saying that the words "our basis limit," in the letter, as he understands them, mean the same thing as the market price. He produced testimony of a cotton dealer of long experience, who testified to the same effect. For the reason that the testimony was sufficient to raise the issue as to the price being fixed by the market price at Belton, and also for the reason that the evidence is sufficient to sustain the finding of the jury that such was the contract, we overrule appellant's first, second, and third assignments of error.

[3] Appellant insists under his fourth, fifth, and sixth assignments of error that the judgment herein should be set aside, for the reason that the court erred in submitting to the jury the issue as to the market price of cotton in Belton on November 27, 1912, and that the jury erred in finding such market value; for the reason that there was no evidence that appellee notified appellant on that date that the cotton was sold to him as of that date. It is true that appellee did not personally notify appellant on said date that he then desired to close the deal, for the reason that appellant was sick, and appellee was not permitted to see him. Appellee went to his office and notified his clerks, who were there in charge of his business, and went to his house and attempted to personally notify appellant, but was not allowed to see him on account of his illness. We think this notice was sufficient. Appellee did all that he could to notify appellant that he desired to close the deal on that date. It has frequently been held that, where a party is required to notify another of given facts, a written notice thereof, postage prepaid, and deposited in the United States mail, is sufficient. Had appellee mailed such written notice, it would probably have been delivered at the office of appellant, but would not have been delivered to him, because he was too sick to receive the same. In the instant case appellee went in person to the office of appellant, notified his clerk that he desired to close the deal on that day, and, while the clerk was not authorized to settle with him for the cotton, we think notice to him was sufficient notice to appellant; especially in view of the fact that appellee thereafter, on the same day, went to the residence of appellant and attempted to notify him in person.

[4] We think the fourth, fifth, and sixth assignments should be overruled for the further reason that appellee notified appellant on December 20th, that he had elected to close the deal on November 27th, at the then market price of $12\frac{5}{16}$. On December 20th, as also on December 23d, the market price of cotton at Belton was $12\frac{1}{2}$. It is true that, under the contract, appellee would not have had the right upon any given day to name a prior day as the one upon which the price of the cotton was to be fixed, but, when he notified appellant that he had named a prior day, and had so notified appellant's clerk, from which appellant must have inferred that appellee was relying upon said notice being sufficient, if appellant was not willing to accept said notice as being in compliance with the contract, he should have so informed appellee. Had he done so, appellee might have waived his demand made on the 27th of November, and named the 23d of December as the date on which he would close the deal. On this day, as above stated, cotton was worth three sixteenths above the price at which it was selling on November 27th; but, instead of notifying appellee that he did not accept the notice given to Mr. Stockton as sufficient, while stating that Stockton had no authority to take up the matter, still, in said letter of December 23d, he said:

"The moment I am able to get up, you and I will make satisfactory settlement of the consigned cotton. My doctor says it looks like January 1st."

This, to our minds, is conclusive of the fact that he accepted the notice given to Stockton on November 27th as sufficient, else why did he say:

"You and I will make satisfactory settlement the moment I am able to get up."

If the deal had not been closed on November 27th, appellee still. had until March 1st to close the same, and the settlement would be made when he should do so, and not as soon as appellant got up. This disposes of the matter complained of in the seventh assignment of error.

[5] Appellant contends that appellee could not have exercised his privilege of closing the deal at any time after the 26th of November, and prior to some time about the middle of January, for the reason that the contract was that the price was to be fixed on his "basis limit," and that on account of his illness he was not in the market, and had no basis limit within those dates. Even if appellant was correct in his contention that the price was to be fixed on his basis limit, we do not think that by retiring from the market within the period named he could prevent appellee from naming a day upon which to close the contract, but that, in such event, appellee would have the right to recover for the market value of cotton on the day selected by him. The testimony in this case of cotton experts is to the effect that the words "our basis limit," commonly used in such contracts, means the same thing as the market price, for the reason that, although different buyers do occasionally have different basis limits from that of the market price, yet usually the limit of all buyers is the market price; for which reason it is to be presumed, in the absence of evidence to the contrary, that, if a buyer was in the market on a given day, his limit would be the market price; and it will therefore be presumed that, where a buyer has retired from the market on a given day, if he had been in the market at that time, his basis limit would have been the market price. The contract in this case certainly contemplated that appellant would remain in the market until the 1st of March.

[6] The court instructed the jury that, if they found from the evidence that appellee never at any time prior to March 1, 1913, notified appellant that he desired to close the contract, they would find for appellee the market price of cotton in Belton on February 28, 1913. Appellant complains of this charge, for that the contract fixed the price to be as of a date selected by appellee, and contends that, if appellee never selected any date within the given time, then the measure of his liability would be the value of the cotton on the respective days of delivery of same. If it be conceded that the charge of the court was error in this regard, still it is immaterial in the instant case, for the reason that the jury were authorized to fix the price as of February 28th only in the event that they found that appellee had not notified appellant on the 27th day of November that he selected that day as the time for closing the contract. The verdict of the jury necessarily involved a finding that appellee had notified appellant on November 27th; and therefore the charge complained of could not have been considered by the jury. As evidence that it was not considered by the jury, the market price of cotton on February 28th was more than that allowed by the jury, but was the exact amount that would have been due appellee at the market price on November 27, 1912. Appellant cites 35 Cyc. 104, 105, and Carter v. McNeeley, 23 N. C. 448, cited in the note to the text, in support of his contention that, if appellee did not exercise his option before March 1st, the measure of his recovery would be the market price when the cotton was delivered. The case of Carter v. McNeeley, supra, is the only authority cited in Cyc. in support of the proposition, and, when all the facts of that case are considered, we do not believe that it supports the text. In that case, as appears from page 141 of the same report, the parties entered into the following contract:

"A. G. Carter agrees to sell his crop of cotton to Thomas McNeeley and to deliver the same picked and unpacked at McNeeley's factory, and McNeeley agrees to pay Carter $1,000 down, and the balance in three, six, and nine months, equal payments, with interest from the time the cotton shall be delivered. The price of the cotton to be fixed in the following manner: Said Carter is to select either Fayetteville, Cheraw, or Camden, and to name a time; and the prices are to be regulated by the prices at the named market and time. The price to be the same as good crops of cotton sell for at the time, and fifty cents to be deducted for hauling per hundred pounds in all cases. The price to be fixed upon by the 1st June next. This 25th January, 1837. [Signed] Thomas McNeeley. A. G. Carter."

Carter not only did not name a time within the period agreed upon, but he did not name a place.

"Upon the trial, the defendant offered to prove that immediately after the execution of the agreement it was said between the parties that, if no time and place should be appointed, the 1st of June should be the day; but the court excluded the evidence. * * * If it had been received, it would not have supplied the defect; since it only went to designate a day, but not one of the places named * * * at which the market price was to govern." 23 N. C. 450.

It was the contention of McNeeley that, inasmuch as Carter had failed to fix any place or time, as provided in the written agreement, he should have the cotton without paying anything therefor. The court overruled this contention, and held that, inasmuch as there was a failure of the contract to provide for any price, it be construed that the purchaser was to pay the market price at the time and place of delivery. This is a correct construction of a contract of purchase where property is sold and delivered without any agreement as to the price to be paid; and the decision of the Supreme Court of North Carolina in the Carter-McNeeley Case was in accordance with the equities between the parties. But that the court did not intend to hold, as a hard and fast rule of law, that in such case the market price at the time and place of delivery should

control is shown by the concluding portion of the opinion, as follows:

"The principle on which we sustain this action must be taken with this qualification, that the plaintiff cannot, by the omission to name a day or place, and by any other default on his part, deprive himself of a remedy on the special agreement, and resort to the implied contract, so as thereby to get a higher price than he would, had he literally or duly observed the terms of the special contract. If, therefore, the defendant had shown that the value of cotton at his factory was greater on the days of delivery than it was at Fayetteville, Cheraw, or Camden on any day the plaintiff could have named, within the period allowed for that purpose, then the special agreement could have been properly invoked, as containing a price beyond which the seller could not go, but nothing of the kind appeared on the trial."

It has been uniformly held that a contract which gives the seller the option to fix the price within a given period means on some day subsequent to the day of sale. Therefore to hold that the price must be taken as of the day of sale is to disregard the contract. While, for the reasons above given, it is unnecessary for us to hold that. upon failure of the seller to name any day, the law would fix the day on which the time expired, still we are inclined to believe that the contract should be so construed. The seller on the last day could have fixed that day, and could not have fixed any prior day; and we see no good reason why, such being the case, the law should not fix the last day on which the option might be exercised as the day of settlement.

[7] To our minds, the most serious objection to the judgment in this case is raised by appellant's ninth assignment of error, to the effect that the court erred in refusing to give a special charge requested, which, in substance, was that, if appellant offered to buy at a price to be fixed on his "basis limit," and the appellee understood that the offer was that the price was to be fixed by the "market price," then the minds of the parties did not meet, and there was no agreement between them as to the price to be paid for the cotton; and in such case the law would fix the price by implication at its market value at the time of its delivery. This requested charge embodies a correct proposition of law, and it cannot be said that there was no evidence raising such issue, for appellant testified that such was his understanding of the verbal contract. However, we do not think that the error in refusing this charge is sufficient grounds for reversing this case. Whatever may have been appellant's understanding of the contract, he was certainly informed by appellee's letter of December 20th that he understood that the market price at Belton was to govern; and appellant's reply and his action at that time clearly indicate that he accepted this view of the contract, and was not relying upon the fact that, by reason of their divergent views as to what the contract was, he was entitled to a settlement at the market price at the time of delivery. If such had been the case he would, on December 23d, have been indebted to appellee in the sum of only $92.65, but on that day he remitted to appellee $3,000, and stated in his letter that he would settle with him as soon as he got up, which must be taken to mean that he would pay him the balance owing him. This was, in effect, a statement by appellant, not only that he accepted November 27th as the date upon which the transaction was closed, but also that his "basis limit," if he so understood the contract, meant the same thing as the market price. If the meaning of the language used in a contract be doubtful, and the parties thereto have given an interpretation to the contract and acted thereon, courts will accept and enforce such construction as being correct. Waterworks Co. v. Cleburne, 13 Tex. Civ. App. 145, 35 S. W. 733; 9 Cyc. 588–590.

To say the least of it, substantial justice has been done in this case; and, finding no reversible error of record, the judgment of the trial court is affirmed.

Affirmed.

## On Motion for Rehearing.

We adhere to our conclusion that the evidence was sufficient to sustain the verdict that the value of the cotton was to be fixed by the market price in Belton. We were in error in saying that appellant remitted to appellee $3,000 on December 23d. The remittance was on December 20th. We still think, however, that the evidence is sufficient to show that appellant accepted appellee's version of the contract that the price was to be fixed by the market price in Belton, and that appellee had elected to close the deal on November 27th.

But, if the contract provided that the price at the time selected by appellee was to be fixed by appellant's "basis limit," appellant could not deprive appellee of his option to fix the day of settlement by retiring from the market and having no basis limit. Appellant's failure to have a basis limit on November 27th, and for about two months thereafter, was occasioned by his own default, and it matters not that it was on account of his illness. Appellant having deprived appellee of the privilege of settling at the time selected by him, on appellant's basis limit, if such was the contract, appellee was entitled to the market price at that time. The evidence shows that, if appellant had had a basis limit on November 27th, in all probability it would have been the same as the market price, though there are occasional exceptions to that rule.

If appellee did not notify appellant on November 27th that he elected to close the deal on that day, he did all that the contract contemplated that he should do in that regard. He went to appellant's office, and notified those found in charge, whether they were appellant's clerks or not; went to his house,

and was denied admission, and tried to send word to appellant the next day by his brother that he had elected to close the deal on the previous day, though cotton had advanced, and supposed that his message had been delivered. If appellant did not receive the notice, his failure to do so was occasioned by his own acts, and it matters not that on account of his sickness he could not avoid such acts. Appellee, having fully discharged his duty, should not be made to suffer on account of the misfortune of appellant.

Believing that we did not err in our opinion herein, appellant's motion for a rehearing is overruled.

Motion overruled.