GREENVILLE TELEPHONE CO. v. CITY OF GREENVILLE. (No. 8421.)

(Court of Civil Appeals of Texas. Dallas. March 27, 1920. Rehearing Denied May 8, 1920.)

1. Telegraphs and telephones ⊜=33(½)—Telephone franchise, strictly construed, held not to authorize installation and removal charges.

Under an ordinance granting telephone franchise, fixing rates for local telephone service, and providing that for removal of a phone from one place to another in the same building there should be no charge, provided that if more than one move were requested within 12 months a charge of the actual expense of the removal, not to exceed $2, might be made for such second removal, the telephone company was not authorized to make a charge of $3.50 for the installation of phones and for their removal, since the franchise was to be strictly construed against the telephone company and in favor of the city, whatever not given in unequivocal terms being withheld.

2. Telegraphs and telephones ⊜=33(½)— Court will not prevent enforcement of contract fixing charges because bankruptcy will result where contract remedy for increase not resorted to.

Where a telephone franchise does not authorize the company to make charges for installation and removal of telephones, the fact that if the company were not allowed to make such charges bankruptcy would result does not authorize the court to substitute another contract for that incorporated in the franchise, particularly where the franchise contains provisions for a readjustment of rates.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Suit by City of Greenville against the Greenville Telephone Company to enjoin violation of franchise. Decree for complainant granting injunction, and respondent appeals. Affirmed.

Clark & Sweeton, of Greenville, for appellant.

T. D. Starnes, of Greenville, for appellee.

RAINEY, C. J. This is an injunction suit brought by appellee to enjoin the appellant from violating the provisions of its franchise granted by said city, in that appellant was charging and collecting from its subscribers certain service charges, to wit: $3.50 for the installation of each residence and business telephone, and $3.50 for each move of each residence and business telephone, which charges are prohibited by the terms of said franchise, and praying for a temporary restraining order, prohibiting appellant from making said charges, and requiring it to install and move the telephone of its subscribers without charge.

Said petition was presented to the district judge and a hearing was set down for January 22, 1920, and notice given to appellant, who answered, in effect, that it was making said charges as alleged, and answered that during the war the United States government had taken over said plant and had put into effect said charges, and since the taking back of said plant said appellant was continuing to make such charges; that said charges are reasonable in the conduct of said business, and are universally in effect throughout the country; that if it be deprived of such revenue it would be unable to render service to the public; that the schedule of rates embraced in the franchise was not binding upon it of January 1, 1920; that after said date it made such charges for its services as would earn a reasonable return on its money invested, etc.; that the court should not grant the relief prayed for on account of the abnormal increase in the cost of labor and material and of everything entering into the telephone business; that said rates are wholly inadequate and confiscatory, etc.

Upon a hearing in chambers the temporary injunction was granted, and an appeal was taken to this court for review.

"(1) The franchise under which appellant is operating was passed by the city commission of the city of Greenville November 17, 1916. It was granted to the Home Telephone Company, but was afterwards acquired by appellant.

"(2) Section 3 of said ordinance provides: 'That upon and after the consolidation of the said two local exchanges, as herein provided, the Home Telephone Company of Greenville shall have the right to charge and collect, under such rules and regulations as are usual in such cases, and subject to the terms and conditions herein provided, the following rates for its

local telephone service: Single line business telephones, $3.00 per month. Party line business telephones, $2.50 per month. Single line residence telephones, $2.00 per month. Two-party line residence telephones, $1.50 per month. Four-party line residence telephones, $1.00 per month. Auxiliary business desk telephones, $1.00 per month. Auxiliary business wall telephones, 50 cents per month. Auxiliary residence telephones, 50 cents per month. If subscribers desire their phones removed from one place to another in the same building, same shall be done by the company without charge provided that if more than one move is requested within a period of twelve months a charge of the actual expense of such removal, not to exceed two ($2.00) dollars, may be made for the second and subsequent removals during such period.'

"(3) Section 10 of said ordinance provides: 'The Home Telephone Company of Greenville shall provide and furnish to all of its local subscribers long-distance facilities over its own lines or the lines of any other telephone company, and shall not charge or collect from its subscribers as toll for such long-distance telephone facilities any rate greater than that which prevails in any other town of like size and population of the city of Greenville.'

"(4) About November 12, 1918, under instructions from the United States government, appellant first began collecting the $3.50 installation charge, the $3.50 outside move charge, and the $3 for inside moves. The government returned appellant's properties in December, 1919, since which time said charges have been continued by appellant.

"(5) That including the revenues arising from the installation and move charges, the revenues of appellant are not sufficient to pay its actual running expenses.

"(6) That it actually costs appellant to install a telephone at a new location, $4.60; that it actually costs appellant to make an outside move where a telephone has been taken out, $5.79; to make an outside move where telephone has not been taken out, $4.50; and to make an inside move, $3.11.

"(7) That service charges, that is, installation and move charges, are made and collected by telephone companies all over the country.

"(8) That appellant is engaged in local and long-distance telephone business in the city of Greenville.

"(9) That appellant is operating upon a lower schedule of rates than any telephone company operating anywhere in this section of the country.

"(10) That since the franchise was enacted, appellant's labor cost has increased 27 per cent. The cost of copper, a large amount of which it uses in its business, has increased 14 per cent. The cost of lead has increased 10 per cent., the cost of poles, 40 per cent., and everything entering into its business has materially advanced in price.

"(11) That said service charges, to wit, the installation and move charges, are reasonable and necessary in the conduct of appellant's business.

"(12) That to be deprived of the revenues arising from said sources would mean certain bankruptcy to appellant."

It was shown by the testimony of Mr. Donoho, general manager of the telephone company, appellant, as follows:

"At the time this franchise was granted, at the time the ordinance was adopted permitting the Southwestern and the Home Telephone Company to consolidate, we did not have in contemplation the making of any such charges as are now complained of; that was not contemplated by the city council nor the Home Telephone Company"

—and it was shown that up to the time the United States government took charge of said telephone company no charge for installation and move was made by said telephone company.

The charter granted to said telephone company also provides:

"Section Four. The rates for service as provided in section three hereof, may, at any time, be readjusted by the city council as provided in this section, but the telephone company shall not seek a readjustment of same during the period of three years from and after the passage and approval of this ordinance by the city council and its acceptance by the telephone company. In the event a readjustment is demanded by either the city or the telephone company, an audit of the books and records of the telephone company shall be made by a competent and disinterested auditor, agreed upon by the city council and the telephone company, or if they fail to agree upon an auditor within ten days after actual written request for such audit is given by either party to the other, then upon application of the party making the request such auditor may be appointed by the Chief Justice of the Court of Civil Appeals having jurisdiction over Hunt county, Texas. If any auditor appointed will not serve or fails to proceed with reasonable dispatch, then a substitute may be appointed in the manner provided for the appointment of the original auditor."

Appellant's first assignment of error is:

"The court erred in granting the injunction and restraining appellant from collecting from its subscribers the installation and outside move charges complained of, because said charges are not prohibited by the franchise ordinance and they are reasonable and necessary charges which appellant is authorized to make in the conduct of its business."

It is contended by appellant that the franchise ordinance granted to appellant by the city of Greenville must be strictly construed against appellee, and that—

"The language of the franchise ordinance permitting appellant to make the designated charges for local telephone service is not a prohibition of the right of appellant to make installation and move charges, because the installation and the removal of a telephone cannot fairly be construed to be the character of service comprehended by said ordinance."

As we understand the franchise ordinance, it does not provide for installation service

charges, but only "when subscribers desire their phones removed from one place to another in the same building, same shall be done by the company without charge, provided that if more than one move is requested within a period of twelve months a charge of the actual expense of such removal, not to exceed two ($2.00) dollars may be made for the second and subsequent removals during such period." So the company's franchise contemplated that services for removals should be given free and no charges made, and this was the practice of the company for several years until after the beginning of the war, when the United States government took charge of and operated appellant's plant, and instituted the service charges; until the taking charge by the government it was not in contemplation by either party to the contract that any service charges were to be made against subscribers, but that services were to be rendered free by the appellant.

[1] We do not concur in the contention of appellant that the "language of the ordinance must be strictly construed against the appellee," but agree with the authorities which hold to the principle as follows:

"Acts of incorporation and other statutes granting special privileges are to be construed strictly, and whatever is not given in unequivocal terms is withheld." Moran v. Miami County, 2 Black, 722, 17 L. Ed. 342. "Grants of franchises by the state are to be so strictly construed as to operate as a surrender of sovereignty no further than is expressly declared by the terms of the grant; the grantee takes nothing in that respect by inference." Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546.

When the government took over the system it was the duty of the subscribers to yield to its rules and regulations, but when it surrendered its control and the plant went back in the hands of the telephone company, the only protection the public had was to rely on the franchise which had been theretofore granted, and on it to look for its rights. The right to make charges for any services has to be regulated by the franchise, and, unless such a right is specified in the franchise, then the company cannot do anything contrary thereto. In other words, the telephone company has no right to go into a city and use the streets without it first obtains a franchise, and that it is granted a a charter for its manner of doing business, its rate of charges when specified, etc., and it cannot roam off into the domain of speculation wherever fancy may lead it. Galveston Wharf Co. v. Railway Co., 81 Tex. 494, 17 S. W. 57; City of Memphis v. Browder, 174 S. W. 982; Waterworks Co. v. City of

Ennis, 105 Tex. 63, 144 S. W. 930; Muncie Natural Gas Co. v. City of Muncie, 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822; Syracuse Water Co. v. City of Syracuse, 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546; Slidell v. Grandjean, 111 U. S. 437, 4 Sup. Ct. 475, 28 L. Ed. 321; Cleburne Water, etc., Co. v. City of Cleburne, 13 Tex. Civ. App. 141, 35 S. W. 733.

Appellant assigns its second error as follows:

"The court erred in granting the injunction herein, even though said installation and move charges complained of should be construed as being prohibited by the franchise ordinance, because the undisputed evidence showed that the rates stipulated in said franchise ordinance, including the installation and move charges complained of, do not produce a sufficient revenue to pay the actual running expenses of the defendant, and it is not possible for the defendant to furnish the service at the rates specified without becoming insolvent, and therefore unable to perform its obligations to the public."

The franchise was granted to the telephone company November 17, 1916. It was accepted by said company and it did business thereunder and in accordance therewith until the United States government took charge thereof and operated it at an increased rate, contrary to those expressed in the franchise, until the plant was surrendered in December, 1919, when the company took charge, and has since been operating it in opposition to the franchise.

[2] It was shown by its general manager that it could not exist if it had to operate at less than the rates charged by the government, and asked that this court interpose its equitable powers and prevent its bankruptcy by dissolving this injunction. The franchise granted by the city of Greenville is the only contract ever entered into between the parties, and we do not think we should make another contract under the circumstances, but we will remit them to the remedy provided in section 4 of said franchise, which the company has never attempted to evoke. Ball v. Texarkana W. Co., 127 S. W. 1069; Smith v. Birmingham W. W. Co., 104 Ala. 315, 16 South. 123; City of Madison v. Madison Gas & Electric Co., 129 Wis. 249, 108 N. W. 65, 8 L. R. A. (N. S.) 529, 116 Am. St. Rep. 944, 9 Ann. Cas. 819; Attorney General v. Railway Co., 35 Wis. 425; Cleburne W., etc., Co. v. City of Cleburne, 13 Tex. Civ. App. 141, 35 S. W. 733.

Under the circumstances of this case we think the action of the trial court in granting the writ of injunction was proper, and it is affirmed.