In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00071-CR
______________________________


YOUREE CULBERSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 030299X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Youree Culberson appeals from the final adjudication of his guilt for the offense of burglary
of a habitation. The trial court found that he had violated the terms of his community supervision,
adjudicated him guilty, and assessed punishment at ten years' imprisonment. On appeal, Culberson
attacks only the sentencing phase of the proceeding, contending the sentence imposed is
disproportionate to the offense. The offense is a second degree felony, which carries a punishment
range of two to twenty years, and a fine not to exceed $10,000.00. Tex. Pen. Code Ann. §§ 12.33,
30.02 (Vernon 2003).
            We first look to see if the issue has been preserved for review. Culberson did not object to
the sentence on the ground it was disproportionate to the crime, or on any other ground, at the time
it was imposed. However, the motion for new trial contains a contention that the sentence was
disproportionate to the offense. To preserve a complaint for appellate review, an appellant must
have presented to the trial court a timely request, objection, or motion stating the specific grounds
for the ruling desired. Tex. R. App. P. 33.1(a)(1)(A); Rhoades v. State, 934 S.W.2d 113, 119 (Tex.
Crim. App. 1996). This Court has held that a defendant is required to raise a disproportionality
objection in a timely manner. Hookie v. State, 136 S.W.3d 671, 679–80 (Tex. App.—Texarkana
2004, no pet.); Jackson v. State, 989 S.W.2d 842, 845 (Tex. App.—Texarkana 1999, no pet.). A
motion for new trial is an appropriate way to preserve the claim for review. Delacruz v. State, No.
06-04-00123-CR, 2005 Tex. App. LEXIS 4747, *2 (Tex. App.—Texarkana June 22, 2005, no pet.
h.).
            Texas courts have repeatedly held that, as long as the punishment assessed is within the range
prescribed by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. 
See, e.g., Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). However, in Jackson, 989
S.W.2d at 845, we recognized that a prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. See also
Fluellen v. State, 71 S.W.3d 870, 873 (Tex. App.—Texarkana 2002, pet. ref'd).
            As we set out in Alberto v. State, 100 S.W.3d 528, 530 (Tex. App.—Texarkana 2003, no
pet.), our proportionality analysis is guided by (1) the gravity of the offense and the harshness of the
penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences
imposed for commission of the same crime in other jurisdictions. See Solem v. Helm, 463 U.S. 277,
292 (1983). Only if we find that the sentence is grossly disproportionate to the offense will we then
consider the remaining factors of the Solem test and compare the sentence received to sentences for
similar crimes in the same jurisdiction and to sentences for the same crime in other jurisdictions. 
Alberto, 100 S.W.3d at 530.
            Here, the sentence imposed is in the middle of the available range for punishment. Further,
there is no evidence in the record comparing this sentence with others in the same jurisdiction for
this offense, or those imposed on defendants in other jurisdictions who committed a similar offense. 
See id. For all of those reasons, disproportionate sentencing has not been shown.
            We affirm the judgment.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 22, 2005
Date Decided:             July 26, 2005

Do Not Publish



opinion/sotseal3.gif" alt="sotseal3.gif" width="139" height="137" border="0">









In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00123-CV
______________________________


SOUTHERN DISPOSAL, INC., Appellant
 
V.
 
CITY OF BLOSSOM, Appellee


                                              

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 70205


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            City of Blossom Administrator, Tony Chance, thought the deadline to give notice of
nonrenewal of the City's contract with Southern Disposal, Inc. (SDI) for solid waste disposal was
January 18, 2001. If Chance was wrong, and the notice mailed to SDI that day was late, the City
risked being subject to an unwanted contract for an additional five-year period. This case arose from
that decision, and largely turns on it.
            The City sought summary judgment asserting that governmental immunity barred an SDI
recovery, that for a number of reasons it was not bound to a contract, and that the Chance notice of
nonrenewal was timely. SDI filed its own partial motion for summary judgment, claiming the
converse. From the trial court's general summary judgment


 for the City, SDI appeals. We affirm
that judgment because—although (1) governmental immunity does not bar this suit, and (2) there
is at least a fact issue about whether a contract bound the City—(3) the Chance notice of nonrenewal
was timely.
1.         Governmental Immunity Does Not Bar this Suit
            It is well established in Texas that sovereign or governmental immunity protects the State,
its agencies, and its officials from lawsuits for damages, absent the Legislature's consent through
statute or legislative resolution. Tex. Natural Res. Conservation Comm'n v. It-Davy, 74 S.W.3d 849,
853–54 (Tex. 2002); Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); City of Texarkana
v. Cities of New Boston, et al., 141 S.W.3d 778, 781 (Tex. App.—Texarkana 2004, no pet.). The
City is a governmental unit and thus is protected from suit by governmental immunity, unless
waived. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(A)(B) (Vernon 2005). 
Governmental immunity encompasses both immunity from liability and immunity from suit. It-Davy, 74 S.W.3d at 853.
            Immunity from liability protects the State from judgments even if the Legislature has
expressly given consent to the suit. Fed. Sign, 951 S.W.2d at 405. But when the State contracts, the
State waives immunity from liability. Id. Here, there is at least a fact issue that the City entered into
a contract with SDI for solid waste disposal. Hence, there is also at least a fact question on whether
the City waived its immunity from liability.
            Immunity from suit bars a suit against the State unless the State expressly consents to the suit. 
City of Texarkana, 141 S.W.3d at 785. SDI argues, in two ways, that the City has waived its
immunity.
            First, SDI contends the City waived its immunity from suit by accepting benefits under the
contract. In Federal Sign, the Texas Supreme Court held that, by entering into a contract, the State
does not waive its immunity from suit. See Fed. Sign, 951 S.W.2d at 408. In a footnote, however,
the court stated there may be circumstances "where the State may waive its immunity by conduct
other than simply executing a contract . . . ." See id. at n.1. Afterward, several courts of appeals 
concluded that, by conduct including accepting benefits under a contract for goods or services, the
State waives its immunity from a breach of contract suit.


 But the Texas Supreme Court, in It-Davy,
declined to fashion a waiver-by-conduct exception to sovereign immunity


 and reaffirmed that it is
the Legislature's sole province to waive or abrogate sovereign immunity. See It-Davy, 74 S.W.3d
at 857. We are constrained by the Texas Supreme Court's ruling in It-Davy; thus, we reject SDI's
argument that we should fashion such a waiver-by-conduct exception in a breach of contract suit
against the City.
            Second, SDI contends the City has waived its governmental immunity from suit by express
consent. At all salient times, the City was either a Type A or a Type B municipality. Both Type A
and Type B municipalities are empowered to "sue and be sued"


 and "plead and be impleaded." Tex.
Loc. Gov't Code Ann. §§ 51.013, 51.033 (Vernon 1999). Hence, consistent with City of
Texarkana, we hold that the Texas Local Government Code effectively waives the City's immunity
from suit,


 requiring it to defend the contract causes of action asserted by SDI. See City of
Texarkana, 141 S.W.3d at 786–89.
            Hence, the City is not entitled to summary judgment based on governmental immunity.
2.         There Is at Least a Fact Issue About Whether a Contract Bound the City
            The City contends the 1996 contract does not bind the City, for a number of reasons. It
asserts (A) the council did not enter into competitive bidding; (B) the minutes of the city council
meeting do not show the contract was ever considered or authorized by the council; (C) the contract,
by its terms, is between SDI and a nonexistent "Blossom Public Works Authority," not the City; (D)
the contract improperly creates a public debt without contemporaneously providing for its payment;
and (E) the contract improperly provides public funds for private benefit. We address those claims
in turn.
 
 
 
            (A) Lack of Competitive Bidding Was Not Conclusively Established
            The City claims the competitive bidding required


 to support a valid contract was not
established by SDI in the summary judgment proof. The record reveals at least some efforts to
satisfy the competitive bidding requirements. Before the March 19, 1996, decision to select SDI's
proposal, the city council at its regular meeting of January 2, 1996, tabled its decision on trash
pickup until "all written contracts are in hand." That suggests the City was considering competing
bids  or  proposals,  a  suggestion  which  is  strengthened  by  the  fact  that,  at  the  special  meeting
of March 19, at least three hopeful waste disposal companies had representatives present. There is
at least some evidence suggesting competitive bidding was pursued. The lack thereof was not
conclusively established by the City.
            (B) Fact Question Exists Concerning City Council's Approval of Contract
            The City also argues the invalidity of the contract on the basis that the city council minutes
do not show council consideration or approval of the SDI contract. We believe there was at least
some evidence the contract was approved.
            True, a city or county may contract only on express authorization by vote of the governing
body reflected in the minutes. City of Bonham v. Southwest Sanitation, Inc., 871 S.W.2d 765, 767
(Tex. App.—Texarkana 1994, writ denied). The proof of the governing body's acts may be supplied
only by the authenticated minutes of the meeting at which the action occurred, unless the minutes
have been lost or destroyed. Id. A plaintiff suing to establish a contract with a city has the burden
to both plead and prove that the minutes show the council's act in authorizing or ratifying the
contract. Id. Persons or entities are charged by law with notice of the limits of governmental
officers' authority and are bound at their peril to ascertain if the contemplated contract is properly
authorized. Id.
            Minutes of council meetings are in evidence. A regular council meeting held January 2,
1996, reflects the city council tabled its decision on trash pickup until "all written contracts are in
hand." A special council meeting was called for Tuesday, March 19, 1996, to decide on the City's
solid waste disposal provider. The minutes of that meeting are cryptic:
Mr. Bangs made motion to go with Southern Disposal, Inc.'s proposal on trash pick-up with the curbside in bags at $7.25 per resident with the $0.25 going to City for
billing. Second by Mr. Westbrook. Passed 3 yea, 1 nay.
 
While the minutes for the March 19 meeting have no details on the terms of the written contract with
SDI, the January 2 minutes suggest the proposed contract document may have been obtained by the
City. In fact, a document appearing to be SDI's proposal, which includes a form of contract and
which contract form also includes the automatic renewal and notice of nonrenewal provisions,
appears in the summary judgment evidence of both parties. And that form contract, as proposed by
SDI, seems to have been executed. The purported contract, therefore, may have been part of SDI's
"proposal" approved by the city council as reflected in the minutes. At least, there is a fact question
about whether the city council approved the contract.
            (C) Intent to Contract With Nonexistent Entity Was Not Conclusively Proven
            The City also argues the contract's invalidity based on the fact that the contract, by its terms,
is between SDI and a nonexistent "Blossom Public Works Authority," not the City. While no party
suggests such an entity exists, it appears from the record that the intent of the parties was to have the
City involved. "Written contracts will be construed according to the intention of the parties,
notwithstanding errors and omissions, by perusing the entire document and to this end, words,
names, and phrases obviously intended may be supplied." Ussery Inv. v. Canon & Carpenter, Inc.,
663 S.W.2d 591, 593 (Tex. App.—Houston [1st Dist.] 1983, pet. dism'd). The minutes reflect that
the City sought to award a contract for solid waste disposal, and the only indication that a
nonexistent entity was to be involved is the contract itself. We conclude the City was not entitled
to summary judgment on this basis.
            (D) Invalid Public Debt Without Payment Provision Was Not Conclusively Proven
            The City also argues the contract improperly created a public debt without
contemporaneously providing the means to pay it, within the Texas Constitution. See Tex. Const.
art. XI, § 7. In part, the City's argument is based on SDI's effort to obtain payment, assuming the
contract renewed after March 19, 2001, without services rendered for such payment. True, the City
cannot validly incur "a debt for any purpose without at the same time making the required provision
for funds to pay the same." See City of Bonham, 871 S.W.2d at 768. But the City has not
demonstrated to us from the summary judgment proof, and we do not find conclusively proven, that
this contract violated that prohibition. The City was not entitled to summary judgment on this basis.
            (E) Improper Provision of Public Funds for Private Benefit Was Not Conclusively Proven
            Finally, the City argues the contract's invalidity because it, in effect, gives public funds to
private interests. Its argument is that the twenty-five-cent allowance for each billing, set up in 1996,
is woefully inadequate now, given current postage rates, even without considering the other costs
involved in billing and collecting accounts for waste disposal services. The city council was
authorized to conclude in 1996 that handling waste disposal in the manner set out in the contract was
in the public interest. So long as its decision on that matter of legitimate public interest is not
fraudulent, arbitrary, or capricious, the contract is not invalid on this basis. See Barrington v.
Cokinos, 161 Tex. 136, 146, 338 S.W.2d 133, 143 (1960); State v. City of Austin, 160 Tex. 348, 356,
331 S.W.2d 737, 743 (1960). Because the contract's invalidity on that basis has not been
conclusively proven here, the City was not entitled to its summary judgment on that basis.
3.         The Chance Notice of Nonrenewal Was Timely
            The parties agree that the contract requires a party which seeks to stop the contract's
automatic renewal must give notice of nonrenewal not less than sixty days before the expiration of
the initial five-year term. They simply disagree on how to determine that deadline. According to
SDI's  logic,  the  initial  five-year  term  of  the  contract  began  March  19,  1996,  and  would  end
March 18, 2001; thus, the contract would require notice of nonrenewal by January 17, 2001. The
City reasons that the five-year term was to end March 19, 2001, and that sixty days before that
expiration was January 18, 2001, the day its notice of nonrenewal was sent. Thus, asserts the City,
the contractual requirements are met and the contract did not automatically renew. We agree with
the City's analysis.
            The relevant portion of the contract states:
The contract shall be for a five (5) year period beginning upon the execution of the
contract and ending five (5) years thereafter. The initial five (5) year term of this
contract shall automatically be extended for successive additional five (5) year terms,
unless either party notifies the other party in writing, not less than sixty (60) days and
not more than ninety (90) days prior to the expiration of the initial five (5) year term
or of any successive five (5) year term of its intentions to terminate this contract. 
Any such written notice shall be serviced [sic] by certified or registered mail, return
receipt requested. In the event such written notice is given, this Agreement expires
on said anniversary date, provided the Agreement has been in effect for the minimum
five year period.
 
(Emphasis added.) The contract was signed and would have become effective sometime shortly after
7:10 p.m. on March 19, 1996.


 According to the terms of the contract, its initial five-year term ends
five years after the contract's execution. Thus, the initial term ended sometime after 7:10 p.m.,
March 19, 2001. The sixtieth day before March 19, 2001, is January 18, which would therefore be
the last day to give an effective notice of nonrenewal.
            The agreement prescribes only two relevant requirements to avoid automatic renewal of the
contract: (1) one party must "notify" the other in writing not less than sixty (60) days before the
expiration of the initial five-year term of the contract, and (2) any such written notice shall be
"serviced [sic] by certified or registered mail, return receipt requested." The City mailed a notice of
nonrenewal January 18, 2001,


 by certified mail, return receipt requested. The City met the two
requirements set by the contract terms.
            While the contract fails to state clearly when notice will be considered to have been given,
it certainly makes neither a requirement that the notice be received by SDI, nor any mention of
receipt at all, just that the City "notify" SDI by the deadline. In fact, the contract language suggests
an intent that the notice be effective when properly mailed. The critical question is when the City
"notified" SDI of its intent not to renew, and the contract's answer is found in its language that the
"notice shall be serviced [sic] by . . . mail" and that if "such written notice is given," the contract will
not renew. Without contrary contract definition or language, this formulation suggests notice is
given when properly mailed.
            Confirming our contract language analysis, it is generally held that, when a contract requires
only that one party "notify" the other, and the matter is not defined in the contract, notice occurs at
the time a notice is mailed. See Brown v. Swift-Eckrich, Inc., 787 S.W.2d 599, 600–01 (Tex.
App.—El Paso 1990, writ denied); Home Benefit Ass'n v. Jordan, 191 S.W. 725, 728 (Tex. Civ.
App.—Beaumont 1916, writ dism'd w.o.j.); Charles B. Smith & Co. v. Duncan, 167 S.W. 233, 235
(Tex. Civ. App.—Austin 1914), aff'd on other grounds, 209 S.W. 140 (Tex. 1919).
            The dispute in this case could occur because of the way SDI chose to draft the contract. 
Where an ambiguity exists in a contract, the contract language will be construed strictly against the
party who drafted it since the drafter is responsible for the language used. Gonzalez v. Mission Am.
Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990); Republic Nat'l Bank v. Northwest Nat'l Bank, 578
S.W.2d 109 (Tex. 1978). If SDI had intended to require receipt of the notice of nonrenewal by a
particular deadline, it could have drafted the contract to read that way. By choosing to use only
"notify" in the contract, SDI specified a notice be sent, not received, by the deadline. SDI failed to
produce any evidence of probative force to raise a fact issue on this point. Therefore, as a matter of
law, the City timely notified SDI of nonrenewal of the contract and the contract did not renew. The
City's summary judgment is valid on this basis.
Conclusion
            The City waived its immunity from liability when it contracted with SDI. The Legislature
through Sections 51.033 and 51.013 of the Texas Local Government Code effectively waived the
City's immunity from suit, requiring it to defend the contract causes of action asserted by SDI. There
is at least a fact issue about whether the contract bound the City. The Chance notice of nonrenewal
sent via certified mail, return receipt requested, on January 18, 2001, was timely; thus, the contract
ended without automatically renewing. Summary judgment for the City was proper.
 
 
            We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 23, 2005
Date Decided:             June 9, 2005